JOHN CUNNINGHAM v. ROZELLE CUNNINGHAM ET AL.

No. 5006.   Decided June 10, 1931.
(40 S. W., 2d Series, 46.)

*Benson & Benson,* for appellant.

The inability of the mother to arrange for the necessaries and support of said children does not ·add to nor affect the liability of the father for the support of said children.

It is not permissible under the law for the father's legal liability for the support of his minor children to be enforced through a suit for a specific allowance to be paid in the future, for such support and maintenance of the minor child.

In divorce proceedings where a trust is created on the property for the support and maintenance of children, the statute and holding of the court specifically reserve the right for such judgments to be opened up in the future and readjustments made to meet the changed conditions, but if the suit in this case should be permitted to stand and a judgment entered up requiring a definite monthly stipend to be paid during the children's minority, there would be no relief from same regardless of the change in conditions, which must in the course of human events change one way or the other, as an adjudication in the case must of necessity become a final judgment and like all other moneyed judgments become res judicata. The authorities all recognize the right of the wife after having furnished necessaries to the minor children to enforce a claim against the husband for such necessaries theretofore furnished and also recognizes the right of a stranger to enforce his legitimate accounts for the necessaries furnished to such children, but the Texas·courts have never passed directly upon the

right of a child to maintain a direct suit against its father to require a future monthly payment. Worthington v. Worthington, 253 S. W., 443; Brewer v. Brewer, 127 S. W., 685; Bemus v. Bemus, 133 S. W., 503; Sully v. Sully, 231 S. W., 97; Hughes v. Hughes, 259 S. W., 180.

*Donald & Donald* and *Spencer & Jameson,* for appellees.

The father of these children is legally liable for their support, maintenance and education, and such petition having specially plead inability of the mother to arrange for the procurement of such necessities, it is proper to bring suit to establish a reasonable amount to be secured from said father, to be used for that purpose.

The father is legally responsible for the support, maintenance and education of his minor children, and, therefore, a suit brought for the purpose of obtaining judgment for a reasonable amount to be used for that purpose is in all things proper, since allegations are made that a line of credit cannot be procured so that such necessities can be obtained.

The usual manner of proceedings, perhaps, is through some criminal prosecution, and the fear thereof usually makes the father arrange for the support and maintenance of the children. We therefore have been unable to find ay direct decision bearing upon the main question now before this Honorable Court of Civil Appeals, but we think that the case of Martin v. Martin, 148 S. W., 344, enunciates very plainly that the right exists or should exist for a child to recover of a father the support and maintenance that that father obligated himself to provide when he caused him to be brought into the world.

The court in sustaining the general demurrer in this case seemed to think that the announcement in the case of Worthington v. Worthington, 253 S. W., 443, was identical and controlling in this case. That was a Missouri case, and as we view it is not on all fours with the question now in this case. In that case it was not alleged that arrangements could not be made for the support and maintenance of said children, nor would anyone extend credit so that they could secure the support and maintenance that they were entitled to. Also that was a case where a guardian brought an action, and under the law no right existed of recovery by a guardian as sought, for usually some estate exists when guardianship proceedings are in being, and further we are prone to believe that the laws of Missouri are quite distinguishable from the laws of Texas, for the decisions of this state have time and again held that father is legally and morally liable for the support and maintenance of his minor children, and full power is given under the law unto the district court to arrange in any way it may deem expedient for the care and support of said minor children. Hartman v. Chumley, 226 S. W., 444; Freeman v. State, 280 S. W., 1609; Gulley v. Gulley, 231 S. W., 97; Speer v. Sykes, 119 S. W., 86.

In the case of Hughes v. Huhges, 259 S. W., 180, Justice Randolph

in treating with the matters involved in this cause upheld the district court's action in awarding a specific sum for the support and maintenance of minor children, and in that opinion stated that the district court had general equity powers, and that any matter, when presented, should be disposed of by it in an equitable way, and upheld the action of the district court in so doing, for he plainly holds that the father is legally liable for the support and maintenance of his children, and in effect says that if the district court could not enter an order allowing a specific sum for such purpose, then the court would be without the right to enforce general equity powers. Schultze v. Schultze, 66 S. W., 56; Bemus v. Bemus, 133 S. W., 503.

MR. JUSTICE GREENWOOD delivered the opinion of the court.

The Court of Civil Appeals, in an admirable opinion by Mr. Justice Dunklin, states the nature and result of this suit as follows:

"Rozelle Cunningham, a girl nine years of age, Cathleen Cunningham, a girl seven years of age, and Weldon Cunningham, a boy four years of age, are the children of Mrs. Toria Cunningham and John Cunningham, her divorced husband. The mother instituted this suit for the benefit of those children against John Cunningham to recover a judgment in the sum of $10,500, payable in monthly installments of $20 for each of the children during their minority.

"The basis of plaintiff's demand consisted in allegations that the children are in dire need of food and clothing, and that the mother is unable to supply them therewith, and that the defendant has failed and refused to furnish any means of support for said children. The petition contains these further allegations:

" 'That they are without means of obtaining food, clothing and other commodities necessary for their support and maintenance at this time, in that they are unable to secure an extension of credit to cover such necessary purchases, and they are unable to obtain a place where such can be purchased upon the faith or credit of their father, John Cunningham, or their mother, Mrs. Toria Cunningham; that their mother Toria Cunningham, is likewise unable to provide credit for them so that such necessary food, clothing and other commodities necessary to their support and maintenance, can be procured, and therefore these plaintiffs are entitled to have this court determine the amount necessary therefor, and render judgmnt accordingly.

" 'That the defendant John Cunningham, is possessed of good physical and mental faculties, and at the present has an earning capacity of approximately $2,500 annually, and has a good position that is permanent, which these plaintiffs say produces unto him that sum. That, in addition to his present earning power and capacity, the said defendant has both personal and real property which could be converted into funds with which such food, clothing and other commodities necessary to their support and main-

tenance can be provided, all of which is needed in maintaining and giving said children reasonable educational advantages which should be offered unto them as they reach a scholastic age.

" 'That, in order to provide sufficient food, clothing, and other commodities necessary to their support, maintenance, and education, based upon an amount in keeping with reason and their station in life, it will require the sum of $60 per month during the period of their minority, that is, $20 for each of them per month during their minority, which said sum these plaintiffs would say is in all things reasonable and within the power of the defendant to provide. That, based upon this sum, as aforesaid, these plaintiffs are entitled to judgment in the sum of $10,500, payable in monthly installments of $60 each and every month.'

"The trial court sustained a general demurrer to the petition, and, the plaintiffs having declined to amend, the cause was dismissed. From that judgment plaintiffs have prosecuted this appeal."

The Court of Civil Appeals reached the conclusion that "under their prayer for general relief and the facts alleged, which the demurrer admits to be true," the minor plaintiffs are entitled "To the following relief, which the trial court, sitting as a court of equity, has jurisdiction and authority to award:

"First. A decree fixing in advance for a stated period of time such an amount for the support and maintenance of the minor plaintiffs as the court in his discretion, after notice to the defendant, and upon evidence heard, may determine to be fair and equitable alike to the children and their father, considering the necessities of all and the ability of the father to furnish such.

"Second. A further decree ordering and requiring defendant to pay to plaintiffs' mother for the maintenance and support of such minors the amount so fixed by the court, and, in the event of defendant's refusal to obey that order, without just cause, the judge of the trial court will be authorized and empowered, after due notice to him upon evidence heard, to adjudge him in contempt and punish him by either fine or imprisonment or by both.

"Third. A further decree within the discretion of the trial judge, fixing the amount of such allowance as a lien to be thereafter enforced by said court or under its direction, if necessary, on any property, real or personal, that defendant may own at the time of any hearing, and appointing a trustee, with all the powers of a receiver, to take charge of all such property and collect the rents and revenues arising therefrom, and return the same into the registry of the court, to be applied to the support and maintenance of the minor children, upon orders of the trial court to be thereafter made."

The judgment of the district court was therefore reversed and the cause was remanded to the district court.

Having granted a writ of error, the Supreme Court is required to determine the question of grave importance as to what relief, if any, the trial court could rightly award these minors, on the facts alleged.

The first legislation in Texas dealing with the jurisdiction of the district court over actions for maintenance of wife or child is "An Act amending the Judiciary Laws of the Republic," approved by President Sam Houston on December 18, 1837. By section 2 of the act, it was provided:

"That in addition to the powers given to the district courts by the act establishing the powers and jurisdiction thereof, approved December twenty second, One thousand eight hundred and thirty six, the said district courts shall have power to hear and determine all suits or action arising between husband and wife for divorce or for a separate maintenance, and may decree divorces as well from the bonds of matrimony as from bed and board, or for a separate maintenance." 1st Gammels' Law, 1437.

It thus appears that it was originally the public policy of the Republic to confer authority on the district court to compel either spouse to provide the other with proper maintenance.

After a brief time, the Congress enacted a change in the public policy of the Republic, disclosed by sections 8, 6, 13, and 4 of the Act of January 6, 1841, which have been continuously re-enacted in substance, and are now embodied in articles 4637, 4636, 4639, and 4638, Complete Texas Statutes. (Vernon's Ann. Civ. Stat., arts 4637, 4636, 4639, 4638).

Section 8 provided: "That if the wife, whether complainant or defendant, has not a sufficient income for her maintenance during the pendency of the suit for a divorce, the judge shall allow her a sum for her support proportional to the means of the husband, until a final decree shall be made in the case." 2 Gamel, 485.

Section 6 provided: "That pending any suit for a divorce, the court may make such temporary orders respecting the property and parties as they shall deem necessary and equitable." 2 Gamel, 484.

Section 13 provided: "That the several district courts aforesaid shall have power in all cases of separation, between man and wife, to give the custody and education of the children to either father or mother, as to them shall seem right and proper, having regard to the prudence and ability of the parents, and the age and sex of the child or children to be determined and decided on the petition of either party, and in the meantime to issue any injunction or make any order that the safety and well being of any such children may require." 2 Gammel, 486.

Section 4 provided: "The court pronouncing a decree of divorce from the bonds of matrimony shall also decree and order a division of the estate of the parties in such way as to them shall seem just and right, having

due regard to the rights of each party and their children, if any; provided however that nothing herein contained shall be construed to compel either party to divest him or herself of the title to real estate or to slaves." 2 Gammel, 484.

The terms of sections 6 and 8 explicitly restrict the court's power in making provision for maintenance and support of its exercise only during pendency of the action for divorce and prior to the entry of final judgment. Again in section 13, after giving the court wide discretion in determining the custody of children in a final decree, by the use of the words, "in the meantime," the Congress again restricted to temporary, interlocutory orders, the exercise of the court's power to make provision for "the safety and well being of any such children." When it came to deal with the final decree, the 1841 act was specific in stating the court might decree the marriage null and void, or decree a separation of the bonds of matrimony, and make award of the custody and education of the children, and finally provide for the husband and wife and children by means of "division of the estate of the parties, in such way as to them shall seem just and right, having due regard to the rights of each party and their children." Sections 1, 2, 3, 13, 4, Act of January 6, 1841, 2 Gammel, 484 to 486.

Whatever doubt might have arisen as to the correct construction of the provisions of the act of 1841 has been removed by their consistent interpretation by the appellate courts for ninety years.

In Fitts v. Fitts, 14 Texas, 450 to 454, the court, by Chief Justice Hemphill, carefully reviewed these statutes, concluding they were copied from states where the public policy was to provide maintenance from the estates and properties of the spouses, and stating:

"As the parties in marriage, in this State, very often have each separate property, and as very generally there is some community property, the most obvious construction of the statute is, that the separate property should be restored to its owner respectively, and that such division of the community property be made, as may seem just and right; it being understood that a due regard must be had to the rights of the parties, that suitable provision must be made for the education and maintenance of the children, if any, and that although the community property is the primary fund from which such provision should be made as would render the division just under all the circumstances, yet there may be cases in which the separate property will be subjected to such charges, and especially in favor of a wife, as may be equitable and right; provided that the title to lands and slaves be not divested."

Again, in construing the statutes, the court said: "The division of the estate is to be made by the Court, in such way as may seem just and right, not only to the parties but to the children. * * * The reasons why those who have brought children into the world, should support and

protect them in their helplessness and infancy, will suggest themselves to every mind. They are enforced by instinct, and by laws human and divine. In making the division of the property, Courts must protect the children, as well as the parents, from injustice. The Court below seems to have acted on the supposition that the community property could alone be set apart for the benefit of the minors. But this is a mistaken view of the law. The provision about the division of the estate of the parties is found in Statutes where community property is unknown. (Fitts v. Fitts, 14 Texas, 443). The separate property may be divided in cases of necessity; or the whole, both separate and community, may be kept together, as in this case, for the benefit of the children; but the decree must not divest either party of their title in the lands or slaves. It will be no breach of the Statute to decree the use of property, for some period, to the use of the children, reserving the fee of the property in the husband, to be enjoyed by him after the expiration of the trust estate for the children." Rice v. Rice, 21 Texas, 68, 68.

In Hedtke v. Hedtke, 112 Texas, 410, 248 S. W., 21, the court pointed out that our present statutes were essentially the same as the act of 1841, and that under these statutes the district court possessed a wide discretion in providing maintenance for the wife and minor children out of the property of the parties, separate or community, including the homestead. Accordingly, a decree of the district court was affirmed which awarded homestead property, belonging to the husband's separate estate, to a wife and minor children for the natural life of the wife.

Gulley v. Gulley, 111 Texas, 233, 231 S. W., 97, 15 A. L. R., 564, adjudged that the father was liable for necessaries furnished by his divorced wife to their minor children. The opinion declares: First, that both parties owe a natural and legal duty to support their children during minority; second, that the duty rests primarily on the father; third, that such duty continues after a decree of divorce awarding the custody of the children to their mother; and, fourth, that the right of minor children to maintenance could be enforced by appropriating for their benefit the use of all property of the parents, or of either of them. That case involved quite a different question from that here presented. It merely recognized a father's liability for necessaries furnished his minor child by a divorced wife or a stranger, where he neglected to furnish same. Such liability is generally enforced in England, in the states of the United States, and always in Texas. Fowlkes v. Baker, 29 Texas, 137, 94 Am. Dec., 270; Walling v. Haning, 73 Texas, 580, 11 S. W., 577; Hartman v. Chumly (Texas Civ. App.), 266 S. W., 444-446; Laumeier v. Laumeier, 237 N. Y., 357, 143 N. E., 219, 32 A. L. R., 658.

The wife was held without remedy by the Supreme Court where no suit was pending, to compel her husband to provide her with certain monthly sums for her support. The holding was made in 1885 in a case

wherein the wife invoked the original jurisdiction of the district court. Trevino v. Trevino, 63 Texas, 651.

The district court of Falls County in 1896 entered a judgment granting a divorce and decreeing that the husband pay his former wife semi-annually, for the benefit of their son twelve months old, the sum of five dollars per month. The judge of the district court of Falls county subsequently adjudged the husband in contempt, by an order entered in vacation, for failing to make the payments required by said judgment. In discharging him, the Court of Criminal Appeals, through Judge Henderson, said:

"It is not necessary in this case to hold that the district court of Falls County had no power, under any circumstances, to make the order it did, allowing alimony or a support for the maintenance of the child of the applicant; but, as stated above, we are inclined to that view." Ex parte Ellis, 37 Texas Crim. Rep., 539, 40 S. W. 275, 276, 66 Am. St. Rep., 831.

A few years later on Martin E. Gerrish was adjuudged in contempt of the district court of Dallas county for failure to obey a judgment of that court, which divorced him from his wife and directed him, in accordance with an agreement filed, to pay his wife $20 per month for the maintenance and support of a minor daughter until she arrived at the age of 21 years or married. The Court of Criminal Appeals, in ordering him released from custody, on habeas corpus, held that "there is no authority in the court to grant permanent alimony covering a long series of years, nor is there any power in the court to imprison the applicant for debt." Ex parte Gerrish, 42 Texas Crim. Rep., 114, 57 S. W., 1123, 1124.

The Court of Criminal Appeals remanded a husband to custody who had refused to turn over community personal property to a trustee, from which $300 was to be paid the wife for the support of minor children under a final judgment of the district court. This action was based on the conclusion that the divorce statutes gave the district court jurisdiction to enter its judgment in dividing the property of the spouses, and that "if the court had the power to do this, it must be conceded that it was authorized to enforce its decree in a contempt proceeding." Ex parte Latham, 47 Texas Crim. Rep., 208, 82 S. W., 1046, 1048.

In Ex parte Davis, 101 Texas, 608-612, 111 S. W., 394-395, 17 L. R. A. (N.S.), 1140, relator had been adjudged in contempt of the district court of Dallas county for his refusal to obey a judgment of that court, directing him to pay his wife $100 attorney's fees and to pay into the court $80 per month for delivery to his wife for the support of herself and her minor children during the pendency of the suit. The facts disclosed that the relator, after the date of the order, had earned $1,272 and offered no excuse for his failure to perform the court's order, other than that such order was a debt and he could not be imprisoned for failure to

discharge same. In holding the order of the district court of Dallas county to be valid, and in remanding relator to custody until he complied therewith, the Supreme Court, in an opinion by Mr. Justice Brown, said:

"Mrs. Davis being without the means of support for herself and her children and Davis having ability to support them, it was both his natural and legal duty to do so, notwithstanding the pendency of the suit for divorce. The wife had a claim upon Davis for the performance of his duties toward her and her children, and, the court having jurisdiction of all the parties, had the power to compel the husband to discharge his obligation to his wife and children. Davis having refused to obey the order of the court and it appearing that he was able to comply with the order and that he had no excuse for the refusal to do so, the District Court had authority to order him into confinement until he should comply with its mandate. I Ency. Pl. & Pr., 439; 14 Cyc., 760; Carlton v. Carlton, 44 Ga., 220; Lewis v. Lewis, 80 Ga., 706, 6 S. E., 918, 12 Am. St., 281; Chase v. Ingalls, 97 Mass., 527; Lyon v. Lyon, 21 Conn., 196; Andrew v. Andrew, 62 Vt., 498, 20 Atl., 817; Haines v. Haines, 35 Mich., 144; Pain v. Pain, 80 N. C., 322."

In refuting the contention of relator that the order for temporary alimony was a debt, Judge Brown declared:

"The order could not be enforced except in that proceeding for divorce. * * * The claim of Mrs. Davis for support of herself and children was not a debt. She could not have maintained an action against her husband to enforce that duty except in the manner in which it was done in the proceedings for divorce. The Constitution of this State does not prohibit the imprisonment of a man except for the collection of a debt and the proceeding in this case being for the enforcement of a duty natural and legal, due from Davis to his wife and children, all of whom were subject to the jurisdiction of the court, does not come within the prohibition of the Constitution.

"Neither was the order of the court directing the payment of the sum by Davis into court for the benefit of his wife and children a debt; the order was in fact not a final judgment. It was limited to the time when the final judgment should be entered in the suit and under our statutes could not go beyond that."

By the above language the court distinctly declared: First, that no action is maintainable in this state to enforce the husband's continuing duty of support and maintenance of his children, except as authorized by the statutes regulating divorce; and, second, that the power of the court is so limited by the statutes that the court can direct no payments by the husband of alimony for maintenance or support of his children beyond the date of entry of the final judgment.

In construing the statutes as relegating the children to the property of

parents in seeking permanent provision for maintenance, support, and education, the decisions of the Courts of Civil Appeals have been quite uniformly in line with those of the Supreme Court and of the Court of Criminal Appeals. In rendering their decisions, the Courts of Civil Appeals have usually been exercising the jurisdiction of courts of last resort under the statute making their judgments conclusive on the law and facts in "all cases of divorce". Article 1821, R. S.

The San Antonio Court of Civil Appeals, in an opinion of Chief Justice James, said:

"It is assigned as error that the court had no power, having refused the divorce, to adjudge that plaintiff pay defendant a certain sum each month, during the minority of the boy, for his maintenance. The parties, after this decree, were still man and wife. The legal obligation and liability of the father for the necessary support and maintenance of his minor child remained, and the nature and extent of the obligation was to furnish or pay for such necessaries as, from his station in life, it was his duty to furnish the child. Walling v. Hannig, 73 Texas, 582, 11 S. W., 547. While we think the court had, in this proceeding, and upon the pleadings, the power to render the judgment affecting the custody of the children, and that judgment was properly rendered, in view of the evidence and the welfare of the children (Nels. Div. & Sep., sec. 979), we are of opinion that it should not have adjudged and fixed liability against plaintiff for the support of the child, nor have made any adjudiciation on that subject." Defee v. Defee, 51 S. W., 274.

The same judge, speaking for the same court, in Ligon v. Ligon, 39 Texas Civ. App., 392, 87 S. W., 839, said:

"The only authority, we think, for making provision for the children in the final decree in such a case, is in the general power given in article 2980, which does not go further than to authorize the court to do so out of the property of the parties."

The Dallas Court of Civil Appeals declared:

"Under the laws of this state, courts are not authorized in divorce suits to provide permanent alimony for the support of the divorced wife. An allowance may be made for her support during the pendency of the suit for divorce, until the final decree is made in the case. Rev. St., art. 2986. The final decree may also order a division of the common estate, if there be such. Id., art. 2980. But the court cannot divest title out of one of the spouses and invest it in the other. Neither can the court compel the husband, by final decree, to support the divorced wife. Pape v. Pape, 13 Texas Civ. App., 99, 35 S. W., 479." Boyd v. Boyd, 22 Texas Civ. App., 200, 54 S. W., 380, 381.

Speaking of an award of permanent alimony in the sum of $5 per month to a child, the Fort Worth Court of Civil Appeals, in an opinion of Judge Speer, said:

"There is no such thing in this state as permanent alimony. * * * Article 2980 seems more nearly to authorize such a judgment than any other, but an examination of it will show that the rights of the children of the union ought to be conserved, not by a fixed charge against either the father or mother, but in the division of the estate of the parties." Bond v. Bond, 41 Texas Civ. App., 129, 90 S. W., 1128.

The Austin Court of Civil Appeals, in Sneed v. Sneed, 296 S. W., 643, 646, said:

"The judgment for future support of the child was also unwarranted. It is well settled in this state that in a divorce case the court has no power to render a personal judgment against either spouse for future support of the child."

The following cases are in harmony with those already cited: Pape v. Pape, 13 Texas Civ. App., 99, 35 S. W., 479, 480; Barry v. Barry (Texas Civ. App.), 131 S. W., 1142, 1143; Bemus v. Bemus (Texas Civ. App.), 133 S. W., 503, 506; Gully v. Gully (Texas Civ. App.), 173 S. W., 1178; Phillips v. Phillips (Texas Civ. App.), 203 S. W., 77; Hughes v. Hughes (Texas Civ. App.), 259 S. W., 180; Hooten v. Hooten (Texas Civ. App.), 15 S. W. (2d) 141.

Before the passage of the act of 1841, the Lord High Chancellor of England, discussing the reason for the refusal of chancery to take jurisdiction of providing for the support of a minor, "unless there was property belonging to the infant to be taken care of in this court," said: "If anyone will turn his mind attentively to the subject he must see that this court has not the means of acting, except where it has property to act upon. It is not, however, from any want of jurisdiction that it does not act, but from want of means to exercise its jurisdiction; because the court cannot take on itself the maintenance of all the children in the Kingdom. It can exercise this jurisdiction usefully and practically, only where it has the means of doing so; that is to say, by its having the means of applying property for the use and maintenance of the infants." Wellesley v. The Duke of Beaufort, 2 Russ. Ch., 22.

Corpus Juris states "the rule is that the power of the court to award permanent alimony is wholly statutory, and usually the statutes make provision therefor," 19 C. J., sec. 566, p. 243; and, that "ordinarily a minor child has no direct right of action in equity against its parent to compel the performance of the latter's duty in respect of maintenance and education." 46 C. J., sec. 5, pp. 1270, 1271.

Cases supporting the rule deduced by Corpus Juris, besides the Texas cases, are: Peltier v. Peltier, Harr. (Mich.), 19; Sawyer v. Sawyer, Walker's (Mich.), 53; Perkins v. Perkins, 16 Mich., 167; Maslen v. Anderson, 163 Mich., 481, 128 N. W., 723; Ritzer v. Ritzer, 243 Mich., 411, 220 N. W., 812; Smith v. Smith, 45 Ala., 267; Rawlings v. Rawlings, 121 Miss., 140, 83 So., 146, 7 A. L. R., 1259; Sikes v. Sikes,

158 Ga., 406, 123 S. W., 164; Worthington v. Worthington, 212 Mo. App., 216, 253 S. W., 443.

Since the determination in Michigan that the courts of that state had no inherent jurisdiction to decree alimony and could exercise no powers in awarding alimony save as expressly conferred by statute, the Legislature of Michigan wisely amended the statutes so as to confer upon the courts for the trial of divorce suits full power and authority not only to provide for the maintenance and education of the children out of property of the parents, without prohibition against divestiture of titles, but also conferred on such courts ample power to make and enforce allowance, pendente lite or by final decree, for the children's support and education, the statutes further authorizing the court to decree that the amount allowed "shall constitute a lien upon such of the real and personal estate of the husband as the court by its decree shall direct, and in default of payment of the amount so decreed the court may decree the sale of the property against which such lien is decreed in the same manner and upon like notice as in suits for the foreclosure of mortgage liens; or the court may award execution for the collection of the same" (Laws of Mich., 1929, sec. 12747); and the statutes further empower the courts to revise their decrees from time to time as the circumstances of the children and parents may require. Sections 12737, 12738, 12739, 12745, 13747, 12748, Compiled Laws of Michigan, 1929. The courts were also empowered, in the absence of proceedings for divorce, to decree the payment of fixed sums of money for the support of neglected and deserted wives and children, and enforce payment of such sums. Section 12797, Compiled Laws of Michigan, 1929.

In determining the case of Ex parte Davis, supra, the Supreme Court explicitly declared that the duty and obligation of parents for the support of their children during minority was not a debt but arose from the status of the parties, and that the courts, without violating the constitutional provision against imprisonment for debt, could enforce obedience to their decrees for the enforcement of the parent's duty and obligation, provided such decrees were authorized by the statutes.

Among the cases cited by Justice Brown to sustain the court's conclusions in Ex parte Davis, was Lewis v. Lewis, 80 Ga., 706, 6 S. E., 918, 12 Am. St. Rep., 281, wherein it was decided relative to a *final* decree for alimony "that when a court directs the payment of alimony by a husband to his wife, it is a duty he owes, not only to his wife but to the public, to comply with the order; and if he fails to perform that duty, we see no reason why the court cannot compel him to do so by an order of attachment, directing his imprisonment in the event of his failure to comply with the order."

In Pain v. Pain, 20 N. C., 322, also cited in Judge Brown's opinion, it is said:

"The allowance is not a debt within the meaning of the constitution,

as contended before us, for which imprisonment is not permitted. It is an order of a competent court, only to be enforced as are other judicial commands when necessary by process of attachment against the person. The power to award the process is inherent in the court, essential to the exercise of its jurisdiction and the maintenance of its authority. Without the ability to compel obedience to its mandates—whether the order be to surrender writings in possession of a party, to execute deeds of conveyance, to pay money, as in the present case, or to perform any other act the court is competent to require to be done—many of its most important and useful functions would be paralyzed. The wilful disobedience of a lawful order is itself criminal, much more so when the non-payment of costs adjudged against a prosecutor in a criminal action, and for which he may be imprisoned."

While we have no doubt of the power of the Legislature to so amend our statutes as to empower the courts to decree and compel the payment of allowances for the support of dependent minors as against a parent, either in divorce proceedings or independent of divorce proceedings, yet we are compelled under the existing statutes to deny such relief, when not sought in a divorce suit, pending final judgment. Nothing is better settled than that the Legislature must be regarded as intending statutes, when repeatedly re-enacted, as is the case here, to be given that interpretation which has been settled by the courts. Love v. Wilcox, 28 S. W. (2d) 515, 524; Pearson v. West, 97 Texas, 239, 77 S. W., 944.

Since the petition in this case contained no allegations sufficient to sustain any judgment for defendants in error, there was no error in the judgment of the district court.

It is ordered that the judgment of the Court of Civil Appeals be reversed and that the judgment of the district court be affirmed.