CALVIN H. SUGG, PETITIONER, *v.* COMMISSIONER OF INTERNAL
REVENUE, RESPONDENT.

DORA A. SUGG, PETITIONER, *v.* COMMISSIONER OF INTERNAL
REVENUE, RESPONDENT.

Docket Nos. 103886, 103887, 103888, 103889.   Promulgated January 12, 1943

*William A. Blakley, Esq.*, for the petitioners.
*D. D. Smith, Esq.*, for the respondent.

OPINION.

HARRON, *Judge:* The parties have not stated the amounts of the trust income for each year involved. The explanation attached to the notice of deficiency refers, in each year, to "the portion" of the trust income held to be taxable to Calvin Sugg, alone, and to Calvin and Dora Sugg, as their community income. However, the issue is presented as though the amounts involved in determining the deficiencies represent the entire taxable income of the trust in each year, and the questions are considered under that assumption.

The broad question is whether or not petitioner is taxable for all of the trust income under the rule of *Douglas* v. *Willcuts*, 296 U. S. 1.[1] However, there are two questions; one, whether petitioner is taxable on part of the trust income which Inis Sugg agreed to use for the support of the children; two, whether petitioner is taxable on the balance of the trust income which she could use for her own support.

(1) The settled law of Texas is that the primary duty of supporting minor children rests upon the father, both before and after the divorce of the parents. *Gully* v. *Gully*, 231 S. W. 95. The legal duty of the father is both primary and continuing. See *Gully* v. *Gully*, *supra*, where it is stated:

> On no other theory than that the legal duty of the father is both primary and continuing can be upheld the settled doctrine in this state that a recovery of damages by a child on account of the death of his father may be sustained for the entire cost of his support until he becomes of age, though the child is in the custody of his mother, by whom he is supported, and though he had no expectation of any voluntary contribution to his support from the father. [See cases cited.]

A decree of divorce which is silent as to the children's support does not relieve the father of his primary duty to support the children. *Gully* v. *Gully*, *supra*. An agreement made by a father with his divorced wife to support his children adds nothing to the obligation already resting on him except to fix the amount and duration of the payments. *Smith* v. *Blanton*, 240 S. W. 651, 654. A District Court has authority, after a decree of divorce has been granted, to make proper provision for the support of the minor children from the property of the father. *Bemus* v. *Bemus*, 133 S. W. 503. In that case the husband obtained a divorce from the wife in 1904. The divorce decree did not make provision for support of the children. Later, in 1905, Bemus entered into an agreement with his former wife to settle their interests in community property, under the terms of which Bemus agreed to pay her $15 a month for the support of the children. In 1909 Bemus stopped making the payments and brought habeas corpus proceedings to obtain custody of the children. The former wife in her answer asked the court to place a trust on Bemus' property to insure the support of the children. The court ordered a trust on certain property of Bemus and directed the trustee to pay an amount out of the revenues of the property each month to the mother for child support. The court said that the "judicial power of the courts to enforce the parents' obligation for support of the children is not lost by the failure of the parties in the divorce proceeding to invoke, in behalf of the children, the exercise of the power."

---

[1] It is stated in the trust instrument that the property delivered to the trustee by petitioner was the separate estate of Calvin Sugg immediately prior to the creation of the trust. For present purposes, therefore, it must be concluded that the trust fund was created out of petitioner's own property.

There is no doubt whatever, that, under Texas law, petitioner was under a continuing liability to support his children. Speer, Law of Marital Rights in Texas, 3d ed., 1929, pars. 634, 635, pp. 789–793. Also, the divorce decree being silent on the matter of support and division of property, the District Court could have taken jurisdiction after the divorce, in a properly instituted suit, to decree that a trustee be appointed over petitioner's property and pay to the divorced wife, out of the revenues of the property, a specified monthly sum for the children's support, if the trust created in 1930 had proved to be inadequate. Speer, *supra*, p. 793. The divorce decree of 1929, being silent on the matter of the children's support, was not conclusive, under the rule that a final judgment is conclusive not only of the issues actually litigated but of all issues properly involved or which should have been litigated. That rule does not apply to the independent rights of the children, who were not privies of the parties to the divorce. *Townsend* v. *Townsend*, 115 S. W. (2d) 769, 772.

It follows that *Commissioner* v. *Grosvenor*, 85 Fed. (2d) 2, is controlling here and petitioner is taxable on the income of the trust which was for the support of the children in the taxable year and which directly benefited petitioner by discharging his duty to support his children in the taxable years. To the extent that Inis Sugg, under her agreement, expended the trust income for the support of the children, petitioner was relieved of his legal obligation. See also, *Ernestine Mitchell*, 38 B. T. A. 1336.

Petitioner cites *Cunningham* v. *Cunningham*, 40 S. W. (2d) 46, and *Hooten* v. *Hooten*, 15 S. W. (2d) 141; affd., 40 S. W. (2d) 52, in support of his theory that he was not liable for the support of the children in the taxable years. Without question, there have been numerous instances in the litigation in Texas on the general subject where children have failed to obtain relief from the courts because improper suits were instituted, and in 1935 a statute was enacted to provide authority in the courts, which they had not been given by earlier statutes, whereby enforcement of the legal duty to support children after divorce would be facilitated. Acts 1935, 44th Leg., p. 111, ch. 39; Vernon's Texas Civil Statutes of the State of Texas, Ann., vol. 13, p. 682, art. 4639 (a). However, in the long run of cases where children failed to receive relief, the courts made it clear that the suits failed because the wrong remedy was sought or the wrong party brought suit. The cases cited by petitioner are in this class. Neither case supports petitioner's contention that he was not under a continuing legal liability to support his children in the taxable years. The cases are not in point with respect to the underlying point at issue. They do, however, reiterate the general rules under Texas law heretofore set forth.

Petitioner apparently asks this Court to adopt the narrow view that because petitioner was not under a court order during the taxable year, i. e., because the income of his property was not subject to a charge for an allowance for his children's support under a court order, he was not under a continuing legal duty to support his children such as to make the income of the trust in question his income and taxable to him under Federal law. Giving due regard to the clear statement of the court in *Hooten* v. *Hooten, supra*, at page 143, with respect to the nature of a father's *personal liability* for the value of necessaries furnished to children, and the time when his "legal liability for a debt" arises, those factors are not in petitioner's favor here. Income tax liability deals with the economic benefits to the taxpayer and, where trust income is to be used to discharge and relieve a parent of his continuing duty to support his children, such income is taxable to the father, the grantor of the trust. For purposes of deciding the tax question under Federal statute, refinements of remedies under local law are not governing.[2]

In the situation here, if the trust had failed to produce income sufficient to provide necessaries to the children, the divorced wife, in her own right, could have sued petitioner to recover the value of the necessaries so furnished. *Hooten* v. *Hooten, supra;* Speer, *supra*, p. 799. Therefore, it can not be said here that the 1929 divorce decree or the 1930 agreement had discharged petitioner's personal obligation

---

[2] Until 1935, the only statutory authority for a court to make any decree regarding the future support of children after a divorce was article 4638, Revised Civil Statutes of Texas, 1925. That statute empowered a court pronouncing a decree of divorce to decree a division of the estate of the parties, having due regard for the rights of children. The Texas courts have pointed out frequently that the District Court has authority, even after granting a divorce, to make proper provision for the future support of minor children from the property of the father, but, that in the exercise of that power the court could not (prior to 1935) render a personal judgment against the father for a specific sum to be paid periodically in the future. However, the court could fix a reasonable allowance to be paid periodically and make the payment of such allowance a charge against the revenues of property belonging to the father. In *Hooten* v. *Hooten*, 15 S. W. (2d) 141, relied on by petitioner, a divorced wife failed in her suit because the trial court erred in making the allowance for future support of children a personal obligation of the father. On appeal the Civil Court of Appeals said that under the facts of the case the trial court should have placed property of the father in the hands of a trustee, with directions to use income therefrom for the support of the children. The court did not hold that the father was not under a continuing obligation to support his children. Rather, the court recognized such to be true. Also, the court found that the pleadings of the appellee, the former wife, were wrong, because she filed suit, not in her own right, but for the children as their next friend. Under Texas law children to whom necessaries have been supplied cannot sue the father to secure reimbursement to others. The right of action lies with the persons who furnished the necessaries. To the same effect is *Cunningham* v. *Cunningham*, 40 S. W. (2d) 46.

There is a distinction made by the Texas decisions between the personal liability of the father after a divorce to others for the value of necessaries furnished his children and the power of a court in a divorce proceeding and after, to make provision for minor children from the separate property of the father. But this distinction, if it may be called such, has to do with enforcing the rights which grow out of the legal obligation of the father to support his children, both before and after the divorce. The procedure to be followed to enforce the father's duty to support varies with the situation existing, but, despite the fine channels into which procedure must follow, there is always existent the legal duty of the father to support the child.

*pro tanto* under the rule of *Helvering* v. *Fuller*, 310 U. S. 69. If such liability of the father under Texas law be regarded as contingent, even so, a legal obligation can be a continuing obligation even though its fulfillment is contingent upon future judicial action. The income of the trust may be sufficient and it may never be necessary for the mother or any person to apply to a court to enforce the father's obligation to support his children. So long as the father can be required to make contributions for the support of the children he is under a "continuing obligation, however contingent." *Helvering* v. *Fish*, 309 U. S. 149.

Inis Sugg was required to use, at the most, 50 percent of the trust income for the support of the two children until each child becomes 25 years of age. No proof has been offered of what amount was spent in each year for that purpose. Therefore, it must be assumed that 50 percent of the trust income in each taxable year was used to support the children. The burden is on petitioner to establish the facts under this point. *Commissioner* v. *Grosvenor*, *supra*. It is held that 50 percent of the trust income in each year is taxable to petitioner as his income. For the year 1934 petitioner is taxable on more than 50 percent of the trust income. He guaranteed the payment of interest on the bonds of the Central Loan Co. The interest amounted to $1,200 in 1934. It is provided in section three of the trust indenture that petitioner guaranteed these bonds to the end that the income from the trust for the support of the children should not be delayed or lost. Accordingly, until those bonds were all redeemed, which took place in 1934, petitioner guaranteed the trust income to be derived from those bonds. Under the rule of *Helvering* v. *Leonard*, 310 U. S. 80, petitioner is taxable on the income derived from those bonds in the year 1934, the earliest taxable year involved. On this point it is pointed out that petitioner's continuing, contingent personal obligation under his guarantee of the principal and interest of the specified bonds ended in 1934, when the bonds were paid in full, and there was no liability for income tax upon other income of the trust in 1934 and in the succeeding taxable years. See *Helvering* v. *Leonard*, *supra*, where the Court said:

* * * So far as the guarantee alone is concerned, they permitted his pre-existing unconditional duty to be transformed into a limited contingent one. But nevertheless they placed a specific and adequate sanction on that duty, so that respondent's personal obligation would not be fully discharged at least until complete payment of the principal and interest on the 6% bonds had been made.

(2) The second question relates to petitioner's liability for tax on income of the trust for the use of his former wife, Inis Sugg. Before considering that question it is necessary to dispose of a fact question.

Respondent has requested that it be found as a fact that prior to the divorce the parties "entered into an agreement, reduced to writing, and signed by Calvin H. Sugg" which provided that petitioner would pay Inis Sugg $500 per month for the duration of her life for her and the children's support. Respondent, assuming that there was such a binding contract, argues that petitioner was under a self-imposed obligation until August of 1930 to pay his former wife a monthly sum for life and that the trust was created for the purpose of discharging that self-imposed obligation. The record does not support respondent's conclusion or theory. It appears that petitioner was willing to make a contract to pay Inis Sugg $500 a month for life in consideration for her giving a release to petitioner of all of her interest in all of the property of petitioner, separate and community. The years prior to 1934 not being before us, there is no question relating to petitioner's tax liability on the monthly payments which he made up to August of 1930, voluntarily. But no binding contract was made between the parties that petitioner would pay his former wife $500 a month for life. The written draft was executed by only one party and the proposed agreement was intended to be a bi-lateral contract. Inis Sugg did not sign the agreement and her consideration, the quitclaim deed, was not delivered to petitioner in connection with the uncompleted agreement under consideration in 1929. She gave the quitclaim deed in consideration for petitioner's covenants set forth in the 1930 agreement. Accordingly, the question under this issue must be considered solely with respect to the terms of the 1930 agreement. The facts pertaining to the prior negotiations and petitioner's voluntary payments made prior to August of 1930 are deemed not material to the question at issue.

The divorce judgment entered in 1929, which has become final, *Townsend* v. *Townsend*, *supra;* Speer, *supra*, par. 640, pp. 798–800, did not make a partition of property. It is the general rule in Texas, as elsewhere, that when spouses are divorced, in the absence of judicial partition, they become tenants in common of the former community property, as if they had never been married, and are clothed with absolute control of their separate property. Speer, *supra*, p. 781; *Fertitta* v. *Toler*, 43 S. W. (2d) 467 (reversed on other grounds, 67 S. W. (2d) 299) ; *Kirkwood* v. *Domnan*, 16 S. W. 428. It is true that a court in a divorce proceeding in Texas, under the statutory authority to divide the estate of the parties at the time of granting the divorce (art. 4638), and in order to do complete equity between the parties, may burden the real property of either spouse for the support of the other, *Helm* v. *Helm*, 291 S. W. 648, 650, and cases cited therein. *Hedtke* v. *Hedtke*, 248 S. W. 21; *Milburn* v. *Milburn*, 254 S. W. 121;

Speer, *supra*, pars. 627–631; and if such is done, the income from the property belonging to one former spouse may be paid to the other for his or her support.

But the court did not provide in the divorce decree here that any of petitioner's property be burdened to provide support to his former wife and we do not have to consider where tax liability would be on income from property under such circumstances. It appears that such charge on the husband's property can only be made in the divorce suit and as part of the decree of divorce. *Kirkwood* v. *Domnan, supra*. As there was no partition of property in the divorce decree in any form, no presumption is present that petitioner was placed under a continuing liability to provide for his former wife by virtue of a partition of property. Under Texas statute alimony may be awarded only during the pendency of the divorce proceedings (art. 4637), and there is no express statutory provision for alimony after the divorce. Speer, *supra*, par. 609, pp. 746–751; *Astall* v. *Astall*, 283 S. W. 564. Only where the divorce court has made a division of property which appears to impose an obligation on the husband to make stated payments to his former wife, may the implication arise, if at all, for income tax purposes, that the husband is under a continuing obligation to support his wife, or to pay permanent alimony.

Petitioner and Inis Sugg entered into an agreement after the divorce and that agreement, aside from any references to the future support of the children, was a property settlement agreement. Whatever reference is made in the preamble to petitioner's obligation to support his former wife is immaterial, because the facts are that petitioner was not under a contractual obligation to support his wife prior to the 1930 agreement, and, as a matter of local law, under the divorce decree, he did not have to contribute to her support. Of course, this agreement was not approved by the divorce court in its decree, as it was nonexistent at the time. When the parties entered into the agreement, they owned their separate property and were tenants in common of the former community property, as a matter of law. Inis Sugg had no claim on petitioner for support. She did have vested interests in certain property in which petitioner had like vested interests, because of their tenancy in common. She agreed to deed to petitioner all of her vested property rights in consideration for his transferring property of a value of $100,000 in trust, the income being payable to her for life. Until the children attained 25 years at least 50 percent of the income of the trust was to be payable to her. That was a contract. Considering the scope of the divorce decree and the property rights of the parties afterwards, it can not be said that the trust created by petitioner was a security device for a continuing obligation in petitioner to support Inis Sugg. There was no such continu-

ing legal obligation. The 1930 agreement and the trust itself did not contain any such contractual obligation. Also, there was no power reserved by the divorce court to make any provision for Inis Sugg under which petitioner could be said to be subject to some contingent liability. It follows that the situation here falls on the side of *Helvering* v. *Fuller*, 310 U. S. 69, and that petitioner is not taxable on the trust income which was for the use of Inis Sugg. See *Pearce* v. *Commissioner*, 315 U. S. 543. Further, it is pointed out that respondent does not contend that the trust income is taxable to petitioner under section 167 of the Revenue Act of 1936 as grantor of the trust. See *Commissioner* v. *Branch*, 114 Fed. (2d) 985; *Paul W. Litchfield*, 39 B.T.A. 1017.

Because of the holding above that petitioner is taxable for one-half of the trust income in the taxable years, because that portion was the most that was to be used for the support of the children, it follows that the portion of the trust income remaining for the use of Inis Sugg was 50 percent and petitioner is not taxable for that portion of the trust income in the years 1935, 1936, 1937, and 1938. With respect to the year 1934, the guaranteed income from bonds amounted to $1,200. The trust income for 1934 was $1,739.17, and the interest from the bonds is in excess of one-half of that amount. Since petitioner was under a personal obligation in 1934 to make payment to the trustee from his own funds, in event of default, for the amount of income which the particular bonds would yield, under the rule of *Helvering* v. *Leonard*, *supra*, petitioner was under a continuing obligation to Inis Sugg because of the guarantee. That constituted an obligation assumed by him. It developed that the guarantee in 1934 was for $1,200 income. Petitioner is taxable upon that amount. *Halbert P. Gillette*, 46 B.T.A. 573.

*Decision will be entered under Rule 50.*