Anna Goldiustova FRANCIS, Petitioner,

v.

Garnet P. FRANCIS, Jr., Respondent.

No. A–11768.

Supreme Court of Texas.

March 1, 1967.

Rehearing Denied March 29, 1967.

Gerald B. Shifrin, El Paso, for petitioner.

Doyle H. Gaither, El Paso, for respondent.

CALVERT, Chief Justice.

Respondent and petitioner were formerly husband and wife. Their marriage was dissolved by a judgment of a district court of El Paso County, entered on May 5, 1959, which granted a divorce to petitioner on her cross-action. The judgment also approved a property settlement agreement entered into by the parties.

The property settlement agreement was executed by respondent and petitioner on April 29, 1959. It dealt with several matters. Only one provision is of concern to us in this case. By that provision petitioner agreed to relinquish all right, title and interest in and to the property of respondent in consideration of his agreement to pay her the sum of $15,000, the obligation to be evidenced by a non-interest bearing promissory note. The $15,000 obligation was payable in monthly installments of $50 each for the first eight months and $100 each thereafter until it was fully paid. The first $7,500 of the obligation was to be paid regardless of petitioner's marital status, but the remaining $7,500 was to be paid only if petitioner remained unmarried. The 1959 judgment found the property settlement agreement to be fair, just and reasonable and ordered it "approved and filed herewith."

This suit for a declaratory judgment was filed by respondent. He had paid $7,500 on the obligation before he filed the suit. He alleged that the provision in the settlement agreement for payment of the remaining $7,500 "is nothing more than an agreement to pay alimony and is contrary to the law of the State of Texas, contravenes public policy of the State of Texas, and is void." He prayed that the court declare "that the conditional $7,500 * * * is unenforceable and void and that the note * * * be declared void." The trial court denied respondent the relief he sought, and by its judgment the court declared the prop-

erty settlement agreement, the note, and the 1959 judgment approving the agreement to be valid. At the request of respondent, the trial judge filed findings of fact and conclusions of law. Among other things, the trial judge found and concluded that at the time of the divorce respondent received all of the community property of the parties, including $2,500 in cash; that neither the agreement of respondent to pay $15,000, the note for that sum, nor the judgment approving the agreement imposed an obligation to pay alimony; that petitioner had never remarried, and that respondent was estopped to assert invalidity of the instruments. The court of civil appeals reversed the judgment of the trial court. In so doing, however, it did not decide whether the agreement and the note were valid or invalid; it declared only that the portion of the 1959 judgment which approved the provision for payment of $15,000 required the payment of alimony and was void. Tex. Civ.App., 407 S.W.2d 295.

The declaratory judgment rendered by the court of civil appeals does not fully dispose of the questions in the case. For, assuming for the moment that the portion of the 1959 judgment which approved the provision in the settlement agreement obligating respondent to pay $15,000 was, in effect, an order to pay alimony and therefore void, the question still remains whether the *contractual* obligation is an obligation to pay alimony and equally void. Before a correct answer to this question can be formulated, we must answer a preliminary question: What is "alimony"?

Courts have ascribed to the word "alimony" different legal meanings, the meaning given usually being attuned to the particular fact situation with which the particular court was dealing. See cases cited in 3 Words and Phrases p. 178, et seq. (Perm.Ed.1953). The meaning which we deem to be correct and which is most comprehensive is found in the following excerpt from 24 Am.Jur.2d 641, Divorce and Separation § 514:

"In the English law the term 'alimony' was originally used to signify the allowance *judicially granted* to a wife for support during a divorce a mensa et thoro [divorce from bed and board] or during separation, but it has come generally, in legal parlance, to include also the provision or allowance, whether periodical or in gross, *judicially made* to a wife upon an absolute divorce * * *. Consequently, *every provision in a judgment* of divorce or separation made solely for this purpose [food, clothing, habitation and other necessaries for support] is to be regarded as alimony, whether expressly designated as such or not, and irrespective of whether it requires payment of money at intervals or in a gross sum * * *." [1]

The central idea to be drawn from the excerpt is that to be alimony the allowance to or provision for the wife's support, whether during pendency of the suit, during a divorce from bed and board (divorce a mensa et thoro), or after an absolute divorce (divorce a vinculo matrimonii), must have been made by a judgment or decree of a court. That this is so finds support in a host of decided cases. Examples: "Generally the term 'alimony' is used to designate payments which the husband makes to the wife *under a court order* for her support pending a divorce action or after a divorce has been granted." Miller v. Miller, 88 Idaho 57, 396 P.2d 476, 479 (1964). "Alimony is an allowance *in a decree of divorce,* carved out of the estate of the husband for the support of the wife." Adler v. Adler, 373 Ill. 361, 26 N.E.2d 504, 508 (1940). "Alimony, as that term is used in the law, is an allowance made for the support of the wife out of the estate of the husband *by order of court* in an appropriate proceeding, and is either temporary or permanent." Bunn v. Bunn, 262 N.C. 67, 136 S.E.2d 240, 242 (1964). "Alimony is but the *judicial admeasurement* of the husband's

obligation to maintain his former wife periodically out of his income." Madden v. Madden, 136 N.J.Eq. 132, 40 A.2d 611, 614 (1945). "Alimony is an allowance which, *by order of the court,* the husband is compelled to pay the wife from the date he has been legally separated or divorced, for her support and maintenance." Henderson v. Henderson, 37 Or. 141, 60 P. 597, 599, 61 P. 136, 48 L.R.A. 766 (1900). "Comprehensively considered, that term [alimony] is generally used and understood by the courts and elsewhere as meaning an allowance to be paid by the husband to the wife for her support and maintenance, and often their dependent children, *pursuant to an order or decree by the court* in a divorce proceeding." Van Dommelen v. Van Dommelen, 218 Mich. 149, 187 N.W. 324, 325 (1922).

■ The foregoing authorities exclude the idea that a mere contractual obligation of a husband to make future periodic or lump sum payments for the support and maintenance of his wife is a provision for alimony. As a matter of fact, courts of other jurisdictions which recognize and authorize alimony after a divorce is absolute, as the law of this State does not, make a distinction between alimony and contractual obligations. Solomon v. Solomon, 149 Fla. 174, 5 So.2d 265 (1942); Mesler v. Jackson Circuit Judge, 188 Mich. 195, 154 N.W. 63 (1915); Miller v. Miller, 88 Idaho 57, 396 P.2d 476 (1964); Hayes v. Hayes, 191 Ga. 237, 11 S.E.2d 764 (1940); Dickey v. Dickey, 154 Md. 675, 141 A. 387, 58 A.L.R. 634 (1928); Bunn v. Bunn, 262 N.C. 67, 136 S.E.2d 240 (1964). The question has usually arisen in contempt proceedings against a husband based on his failure to make alimony payments as directed in a prior divorce decree. In *Solomon* a separation agreement between husband and wife obligated the husband to make monthly support payments. The divorce decree contained a recital that the agreement "is hereby approved and ratified in all respects and incorporated by reference into this Decree and made a part hereof." The Supreme Court of Florida held that the decree so fully incorporated the agreement that the payments constituted alimony and were enforceable by contempt proceedings. The same holding was made by the Supreme Court of Michigan in *Mesler* in which the divorce decree specifically ordered payment of an agreed sum for support of the wife. In *Miller,* on the other hand, the Supreme Court of Idaho upheld the right of a divorced wife to recover monthly sums which the husband had obligated himself in a separation agreement to pay "as alimony" against a contention that the obligation was neither alimony nor valid since it had not been included in the divorce decree. In *Bunn* the Supreme Court of North Carolina had occasion to distinguish between consent judgments for the payment of subsistence to the wife in which the divorce decree merely approves the agreement and those in which the divorce decree adopts the agreement as the court's judgment and orders the payments made. The court said judgments of the first type were enforceable only as ordinary contracts whereas the latter type were enforceable by contempt proceedings.

■ The statutes and public policy of this State do not sanction alimony for the wife after a judgment of divorce has been entered. See McElreath v. McElreath, 162 Tex. 190, 345 S.W.2d 722, 747 (1961); Cunningham v. Cunningham, 120 Tex. 491, 40 S.W.2d 46, 75 A.L.R. 1305 (1931); Art. 2328b–1, Sec. 2(6); Art. 2328b–3, Sec. 7.[2] In this State as in other states, alimony is an allowance for support and sustenance of the wife, periodic or in gross, *which a court orders a husband to pay;* but in this State, unlike in other states, such support payments may be ordered only "until a final decree shall be made in the case." Art. 4637; Cunningham v. Cunningham, supra. Support payments ordered to be made after divorce from the income from the hus-

2. All references to articles are to Vernon's Ann.Texas Civil Statutes.

band's property, although considered alimony in many jurisdictions, is not considered alimony in this State. Hedtke v. Hedtke, 112 Tex. 404, 248 S.W. 21 (1923); Keton v. Clark, 67 S.W.2d 437 (Tex.Civ. App.—Waco 1933, writ refused). When its true meaning is distilled from the statutes and the court decisions of this State, alimony which contravenes the public policy of the State is only those payments imposed by a court order or decree on the husband as a personal obligation for support and sustenance of the wife after a final decree of divorce.

From what has been said, it follows that obligations assumed by the husband in separation agreements or contracts to make payments for the support of the wife after a divorce decree becomes final, are not obligations to pay alimony and do not violate the public policy of this State. The contractual obligation of respondent to pay to petitioner the remaining $7,500 of his $15,000 obligation and his promissory note evidencing his obligation are, therefore, not void as being in violation of the public policy of this State. Obligations of this type may be void or unenforceable for other reasons but none are urged here for so declaring.

There remains the question of the validity of the provision of the judgment of May 5, 1959, which approved the agreement of the parties. The provision reads:

"It further appearing to the Court that the parties hereto have arrived at a community property settlement agreement which the Court has examined and finds to be fair and reasonable and just, the Court hereby ORDERS it APPROVED and filed herewith."

On the face of it, the provision did not purport to order respondent to pay the sum of $15,000 to petitioner in installments after the judgment became final; it merely approved a property settlement agreement which the parties themselves had made. While Art. 4638 directs courts granting divorces to "order a division of the estate of the parties in such a way as the court shall deem just and right," it is not the purpose of the statute to proscribe amicable division and settlement by the parties. And if as a part of their settlement the parties agree that the husband will make support payments to the wife after a divorce is granted, approval of the agreement by the court should not be held to invalidate it as alimony. Amicable settlement by the parties of their property rights should be encouraged, not discouraged. The agreement will then have whatever legal force the law of contracts will give to it. See Ex Parte Jones, 163 Tex. 513, 358 S.W.2d 370 (1962).

A number of decisions of courts of civil appeals beginning with McBride v. McBride, 256 S.W.2d 250 (Tex.Civ.App.— Austin 1953, no writ) have held that contracts made in contemplation of divorce which impose a personal obligation on a husband to make payments for support of his wife after divorce are void as against the public policy of this State. They need not be cited. In so far as they conflict with what we have said here, they are disapproved. In *McBride* the trial court *ordered* the divorced husband to pay certain monthly sums for the support of the wife after divorce. Only the validity of that part of the judgment, not the validity of the agreement between the parties, was in issue. The opinion indicates that the court thought the agreement of the husband to pay was also alimony and void. From what we have said in this opinion, it is obvious that we do not agree with that conclusion.

The judgment of the court of civil appeals is reversed and the judgment of the trial court is affirmed.