**Albert P. DICKER, Appellant,**

v.

**Mollie P. DICKER, Appellee.**

No. 16958.

Court of Civil Appeals of Texas.

Fort Worth.

Oct. 25, 1968.

Rehearing Denied Dec. 6, 1968.

John L. Sullivan and Jack W. Gray, Denton, for appellant.

Royce Whitten and William P. Philips, Jr., Denton, for appellee.

OPINION

LANGDON, Justice.

This suit was instituted on June 2, 1966, by appellee, Mollie P. Dicker, plaintiff, against appellant, Albert P. Dicker, as defendant, for alleged breach of a Property Settlement Agreement between said parties, dated April 14, 1964, made in contemplation of divorce and subsequently approved by the court and incorporated by reference in the divorce decree.

After non-jury trial, the plaintiff was awarded judgment against the defendant, for the aggregate sum of $115,745.24, which judgment included an award of $100,000.00 for breach of a provision in said Property Settlement Agreement requiring the said Albert P. Dicker to pay Mollie P. Dicker, the sum of $100,000.00, $15,000.00 attorney's fees, and $745.24, as reimbursement to Mollie P. Dicker for sums of money expended by her for medical and educational expenses for the children of the parties.

In its judgment the court made findings as follows:

The plaintiff and defendant were married on November 24, 1937. Four children were born of the marriage, namely Barry Lloyd Dicker, Duvora Dicker, John Elliott Dicker and Joyce Dicker. Plaintiff was granted a divorce from the defendant in the Circuit Court for Montgomery County, Maryland, in Cause No. 26941 on July 2, 1964. A Property Settlement Agreement which had been entered into between the plaintiff and defendant on April 14, 1964, was in all things ratified, confirmed and incorporated by the Court in the divorce decree. Said decree and the Property Settlement Agreement have been admitted into evidence in this cause. The divorce judgment is final.

"The Court finds that the Defendant has breached said Property Settlement Agreement in the following respects:

"A. In failing to pay to the Plaintiff for her support and maintenance the sum of ONE HUNDRED FIFTY and NO/100 ($150.00) DOLLARS per week on Monday of each and every week commencing on April 20, 1964. In this connection the Court finds that the Defendant has not paid said sum of ONE HUNDRED FIFTY and NO/100 ($150.00) DOLLARS per week since February, 1966.

"B. In failing to pay and be solely responsible for all necessary and reasonable medical, dental and hospital bills incurred by the wife on behalf of the minor children of the Parties including the cost of a tattooing program which was being performed at the time of the divorce and continued to be performed thereafter to correct a birthmark on the face of one of the minor children, namely John Elliott Dicker.

"C. In failing to pay all college academic expenses and all expenses for room and board for the children of the Parties who attended college pursuant to Paragraph No. 4, Page 2 of said Property Settlement Agreement.

"D. In failing to pay the lien existing on Lot No. 6 in Block No. 19 in a Subdivision known as EDGEMOOR as per plat recorded in Plat Book 3 at Plat 284 among the Plat Records of Montgomery County, Maryland, known as 7400 Glenbrook Road, Bethesda, Maryland, which was conveyed to Plaintiff by Defendant but burdened with a First Deed of Trust. In this connection the Court finds that said property was sold by the wife and said lien secured by said First Deed of Trust was paid out of the proceeds of such sale and the Court further finds that the said Defendant failed to continue to make the payments to the Plaintiff in the same installments and on the same terms and for the same period as would have been required had said Deed of Trust not been paid or assumed. The Court further finds that such failure is a breach of Paragraph 8, Pages 3 and 4 of the Property Settlement Agreement which was admitted in evidence before the Court.

"E. In failing to pay to the Plaintiff the sum of ONE HUNDRED THOUSAND and NO/100 ($100,000.00) DOLLARS net after taxes by making annual payments in an amount equal to one-third (⅓) of the net cash flow received by the Defendant each year from all of his assets and investments. In this connection the Court finds that the Defendant earned at least one (1) THIRTEEN THOUSAND and NO/100 ($13,000.00) DOLLAR fee by virtue of a real estate transaction which transpired in the State of Florida; that the Defendant deposited in the First National Bank of San Angelo, Texas, a sum in excess of FIFTY THOUSAND and NO/100 ($50,000.00) DOLLARS and placed the same in the name of Gloria Kline and that said Defendant, although having testified in this case, failed to establish to the Court's satisfaction the actual and real source of said moneys, and having thus failed and further refused to deliver to the Court a full and accurate statement prepared by a Certified Public Accountant showing his net cash flow, the Court finds that said moneys constitute net cash flow; that the Defendant withdrew from the Bank of Dallas in Dallas, Texas, the sum of NINE THOUSAND and NO/100 ($9,-

000.00) DOLLARS immediately prior to February 2, 1967; and at the time of such withdrawal, the Defendant was cognizant of the fact that his deposition was to be taken in the District Court of Denton County, Texas, on February 2, 1967. In this connection the Court finds that such withdrawal at said time and on said occasion was for the specific purpose of evading the questions which were to be propounded as to the source of any of his assets and further said Defendant has not satisfactorily explained to the Court the source of said NINE THOUSAND and NO/100 ($9,000.00) DOLLARS, in violation of the direct Order of the Court and thus the Court finds that the same constitutes net cash flow.

"The Defendant's testimony in its entirety reveals that said Defendant lived and maintained himself in an expensive manner, drove expensive automobiles and spent considerable sums of money not accounted for. In this connection the Court further finds that the Defendant has failed pursuant to Paragraph 9, Pages 4 and 5 of said Property Settlement Agreement to furnish the Plaintiff with a full and accurate statement prepared by a Certified Public Accountant showing net cash flow received by the Defendant for the calendar years involved since the date of divorce; and in addition, has failed to accompany any such statement by a complete copy of his Federal Income Tax Returns for such year and to show the method by which said sum was computed. In this connection the Court further finds that this Court Ordered the Defendant to furnish this Court with a full and accurate statement prepared by a Certified Public Accountant showing the net cash flow received by said Defendant for the calendar years involved; and although such Order was given by said Court, the Defendant failed to furnish to the Court said accurate and complete statement prepared by a Certified Public Accountant.

"In view of the above findings of the Court, the Court is of the opinion that the Defendant has breached said Property Settlement Agreement which became a part of the decree of divorce and that the demeanor of the Defendant as he testified and his attitude in giving his testimony and after weighing his testimony and giving it all the credence which the Court could possibly give, the Court is nevertheless of the opinion and finds that the Defendant does not ever intend to pay any portion of said ONE HUNDRED THOUSAND and NO/100 ($100,000.00) DOLLARS and has in reality determined that he shall not pay it unless Judgment is rendered against him.

"The Court finds that the Plaintiff has, because of the failure of the Defendant to carry out the provisions of the Property Settlement Agreement and because of said Defendant having breached said Property Settlement Agreement, been required to employ attorneys to represent her to enforce the provisions thereof. That she has employed Royce Whitten and William P. Philips, Jr., attorneys at law, of the Denton Bar of Denton, Texas, to represent her in this matter and that in accordance with the Property Settlement Agreement and applicable law said attorneys are entitled to a reasonable attorneys' fee for representing the Plaintiff. The Court finds that a reasonable attorneys' fee which would be customary in Denton County, Texas, where this suit was tried is the sum of FIFTEEN THOUSAND and NO/100 ($15,000.00) DOLLARS.

"It is, therefore, the ORDER, JUDGMENT and DECREE of the Court that the Plaintiff have and recover Judgment against the Defendant for the sum of ONE HUNDRED FIFTEEN THOUSAND SEVEN HUNDRED FORTY-FIVE and 24/100 ($115,745.24) DOLLARS including attorneys' fees and that the Plaintiff recover her costs in this behalf expended, for which let execution issue; * * *."

Appellant's appeal from the above judgment is based upon twenty-four (24) points of error presented in four groups as follows:

Group 1 (points one through 13) complain of the award of $100,000 for breach

of contract because it is not supported by the evidence.

Group 2 (points 14 through 21) contend that the trial court's findings operate to transfer the burden of proof and thereby eliminates legal requirement of proof by the plaintiff to support the essential elements of her cause of action by a preponderance of evidence.

Group 3 (points 22 and 23) concerns award of attorney's fees.

Group 4 (point 24) presents the position that the aggregate sum of the judgment is grossly excessive and is result of bias and prejudice except the sum of $745.24 for reimbursement of sums expended by plaintiff for education and medical expenses for the children of the parties. None of appellant's points of error are directed to the award of the latter sum.

We affirm.

"The Property Settlement Agreement" between the parties hereto reflected that they were married on November 25, 1936, in Washington, D. C., and that four children were born of their marriage. The youngest child was 15 and the oldest, age 21. One of the children had a serious medical problem involving removal of a facial birthmark.

Omitting the formal declarations the Property Settlement Agreement contained the following provisions which are pertinent to this appeal:

"1. During the joint lives of the parties and so long as the Wife does not remarry, the Husband shall pay to the Wife for her support and maintenance the sum of One Hundred and Fifty ($150.00) Dollars per week on Monday of each and every week commencing April 20, 1964. Any and all State and Federal income taxes on the aforesaid payments shall be paid by the Wife."

2. (Provides for support and maintenance of the children by the husband.)

3. (Provides for husband to pay all necessary and reasonable medical, dental and hospital bills incurred by wife on behalf of children.)

4. (Provision by which husband is to pay all of educational or academic expenses of children.)

5. (Provision by which wife acknowledges adequacy of requirements contained in paragraphs 2, 3, and 4.)

6. (Relates to attorney's fees with reference to paragraphs 1 through 4.)

7. (Custody of children to wife, subject to reasonable visitation.)

8. (Requires husband to transfer the home of parties to wife, subject only to first deed of trust.) This paragraph contains the following language with reference to the deed of trust: "The Husband agrees that the payment of the aforesaid first deed of trust shall be and remain his sole obligation and that he shall make all payments thereon according to its terms. In the event the Wife shall sell the aforesaid real estate and as a result thereof the said trust is either paid from the proceeds of the sale or assumed by the purchaser, the balance of said trust as of the date of said sale or assumption shall be paid by the Husband to the Wife in the same installments, and on the same terms and for the same period as would have been required had the said trust not been paid or assumed.

"9. The Husband shall, without regard to remarriage of the Wife in the event of a divorce between the parties, pay to the Wife the sum of One Hundred Thousand ($100,-000.00) Dollars, net after taxes, if any. The Husband shall pay said sum of One Hundred Thousand ($100,000.00) Dollars by making annual payments in an amount equal to one third of the net cash flow received by him each year from all his assets and investments. For purposes of this provision the term 'net cash flow' shall be understood to mean the difference between gross receipts and actual cash disbursements *incurred in the business of earning such receipts.* Such cash disbursements shall be only those as are expressly deduct-

ible for Federal income tax purposes, but no deduction shall be allowed for depreciation.

"The parties agree that as each annual payment is made under this provision the payments provided in paragraph 1 of this agreement shall be reduced in the same proportion as the said annual payment bears to the sum of One Hundred Thousand ($100,000.00) Dollars.

"Payment hereunder shall be made on the 15th day of June of each year and the Husband agrees that simultaneously therewith he shall furnish the Wife with a full. and accurate statement, prepared by a certified public accountant, showing the net cash flow received by the Husband for the preceding calendar year accompanied by a copy of his Federal Income Tax return for such year, and showing the method by which said sum was computed."

10. (Concerns disposition of personal property.)

11. (Provision relating to payment of wife's attorney in connection with the divorce.)

12. (Provision as to income tax returns and other forms wife is required to sign.)

13. (Provision to indemnify wife from liability for taxes.)

14. (Confers on each right to dispose of and enjoy property, etc., received under the agreement.)

15. (Wife's covenant as to debts, etc.)

"16. The parties agree that *the provisions of this agreement shall constitute a claim against the estate of the Husband if he shall die prior to a full performance of his obligations hereunder."*

17. (Recites that wife under terms of agreement receives the property set aside to her full settlement of all claims, etc.)

18. (Same as 17 for husband.)

19. (Waiver of each as to claims against property of other.)

20. (Property settlement not to be considered as admission of condonation, etc.)

21. Latter portion of this paragraph contains following language: "This agreement may be offered in evidence in such action (divorce) and if acceptable to the Court, shall be incorporated by reference in the decree that may be granted herein. Notwithstanding such incorporation, *this agreement shall not be merged in the decree, but shall survive the same and shall be binding and conclusive on the parties for all time."*

22. (Provides that each shall cooperate in signing all papers to effect the provisions of the agreement.)

23. (Acknowledgment that each entered the agreement on own accord and on independent advice of counsel.)

24. (Entire understanding of parties is contained in the agreement.) (Emphasis throughout above agreement has been added by us.)

The original decree of divorce was granted on July 2, 1964. In the latter part of 1965 the plaintiff found it necessary to initiate suit in the U. S. District Court for the District of Columbia in an effort to collect arrearages in child support payments, for medical expenses, for legal and other expenses due her because of the defendant's failure to comply with paragraphs 2, 3, 8, 9, and 10(c) of the Property Settlement Agreement of April 14, 1964.

Under paragraph 10(c) of the Agreement the husband (defendant) was to pay various accounts which were itemized including an item of $1,366.88 owed to (Associated Dry Goods, Inc.) Lord and Taylor, Washington, D. C. Because of the husband's failure to meet his responsibilities under this paragraph of the Property Settlement Agreement the wife incurred expenses in the suit filed against her for this item.

The Stipulation of Settlement of this latter suit in the Federal Court was signed by the parties on December 6, 1965. It provided for modification of child support

payment (Paragraph 2 of Property Settlement Agreement) and settlement of the wife's suit.

Now once again the wife, plaintiff in the instant suit, has resorted to the courts seeking to obtain performance by her former husband of his obligations to her and to the children under the Property Settlement Agreement (contract) which he voluntarily signed and which was approved by the court granting the divorce.

Under this record the plaintiff has to date and continues to comply with all requirements and obligations imposed upon her by the agreement. She has signed all instruments required of her and continues to expend money for the support, maintenance and upkeep of the children, including all necessary medical expenses. On one occasion after the divorce she signed papers (disavowing any interest in proceeds) to enable her former husband to sell his share of the Carlisle Motel for $110,291.00. At this time the defendant, to secure her cooperation, promised the plaintiff that sale of the motel would enable him to pay her the $100,000.00 required of him under the provisions of the Property Settlement Agreement. While the wife claimed no title to the motel she was, under the agreement, entitled to interest and earnings from investment of the proceeds from the sale thereof.

■ At time of the trial the defendant could not recall—he had forgotten where he had deposited the $110,291.00. Interest alone on this sum would have amounted to something in excess of $5,000.00 and would constitute cash flow.

■ It is undisputed in this record that the defendant has failed and refused to comply with all provisions of the Property Settlement Agreement under which his former wife and his children could benefit. The findings of the court that defendant has failed to make payments to the plaintiff required under paragraph 1 and the payments for child support, medical care and education required by paragraphs 2, 3 and 4, respectively, are supported by ample evidence. We find none to refute it. It is undisputed that defendant has failed and refused to comply or to perform his obligations under paragraph 8 of the Property Settlement. It appears from the record that the plaintiff sold the home she received under the settlement. The lien in question was in excess of $12,000.00. It appears that approximately $1,000.00 was paid on it and that plaintiff was required to pay $12,000.00 out of the proceeds of the sale of the home to the Riggs National Bank to release said lien. She has not been reimbursed for this amount. Defendant has made no effort to comply with paragraph 8 of the Property Settlement Agreement.

■ The chief contention of defendant revolves around paragraph 9 of the Property Settlement. It will be noted that the first sentence of this paragraph ending with a *period* says "The Husband *shall*, without regard to remarriage of the Wife in the event of a divorce between the parties, pay to the Wife the sum of One Hundred Thousand ($100,000.00 Dollars, net after taxes, if any. (Period.)" (Emphasis added.) The meaning of this sentence is clear and it means what it says. Under paragaph 16 of the Agreement it constitutes a claim against the estate of the husband and, under paragraph 21, it "shall be binding and conclusive on the parties for all time."

The sentence which follows does not qualify the first. It merely specifies a means by which the $100,000.00 shall be paid in order to provide an annual payment to the plaintiff.

There is no language in the paragraph which precludes payment by any other means. Further this paragraph is tied in with paragraph 1 of the Property Settlement and provides that the payments in paragraph 1 will be reduced as payments are made under paragraph 9. For example, a payment of $50,000.00, under paragraph 9, would reduce payments under paragraph 1 to $75.00 per week. The latter payments

were to terminate on marriage of the plaintiff whereas the $100,000.00 was to be paid irrespective of remarriage.

Under paragraph 9 the husband agrees that he shall furnish the wife with a full and accurate statement, prepared by a certified public accountant, showing the net cash flow received by the husband for the preceding calendar year, accompanied by a copy of his Federal Income Tax for such year, and showing the method by which said sum was computed.

The Stipulation of Settlement (December 6, 1965) signed by the parties hereto in the suit between the parties in the U.S. District Court in the District of Columbia made reference to paragraph 9 of the original Property Settlement and once again defendant agreed that he would forthwith deliver a copy of the income tax return, certified to by defendant's accountant to be a true copy of said return as filed, and a full and accurate statement showing the "net cash flow" and showing the method by which such sum was computed.

Under this record the defendant has failed and refused to furnish copies of his income tax returns or a full and accurate statement as required by the Property Settlement Agreement or the "Stipulation of Settlement."

At the conclusion of the trial in the instant case the Judge directed the defendant to furnish the tax returns and accurate statements of account to him. According to the court findings the defendant failed and refused to comply with this directive. The requirements in paragraph 9 were essential. By this means the plaintiff was not required to rely upon defendant's word that there was no cash flow. She could make this determination from the tax statements and the true and accurate statements prepared by a certified public accountant. By his failure to produce such items and because of his breach of all other material aspects of the contract we have concluded that the trial court entered the proper judgment.

The contention of appellant that the plaintiff failed to show that there was an actual cash flow, and in what amount, assuming the truth of such contention, does not under the facts of this case, excuse the defendant for his breach of the essential elements of the property settlement contract. The contention that the plaintiff is not entitled to the $100,000.00 unless she can prove by competent evidence that there is or was an actual cash flow is not valid nor is the appellant's claim that such amount along with the payments provided in paragraph 1 of the agreement constitute alimony payments and thus are against public policy.

The record reflects that in 1962 prior to the divorce of the parties to this suit the defendant made a statement through his certified accountant that he had a total net worth of $1,848,512.20. When the defendant was confronted with this statement during the trial of the instant case he was very evasive. He was unable to say whether it was correct because being a copy it may have been altered. He could not remember whether he had $1,800,000.00. There was no denial.

In 1964 when the property settlement was entered into and the divorce decree approving same was granted it is apparent from the record that defendant was well off financially. His wife received the home, some personal property, four children and the responsibility attendant to custody, care, and maintenance and support of the four children. The divorce court approving the property settlement which was agreed to by the parties considered it and approved it. The Agreement contains no reference to alimony. Certainly it cannot be said that she received more than her fair share of the estate. The obligations assumed by the appellant in his contract to make payments for support of his wife after a divorce decree becomes final are not obligations to pay alimony and do not violate the public policy of this state.

This contract or property settlement was one entered into by the parties and present-

ed by them to the court for approval and incorporation in the decree of divorce. Francis v. Francis, 412 S.W.2d 29 (Tex. Sup., 1967): "And if as a part of their settlement the parties agree that the husband will make support payments to the wife after a divorce is granted, approval of the agreement by the court should not be held to invalidate it as alimony. Amicable settlement by the parties of their property rights should be encouraged, not discouraged. The agreement will then have whatever legal force the law of contracts will give to it. See Ex Parte Jones, 163 Tex. 513, 358 S.W.2d 370 (1962)." See also Cornell v. Cornell, 413 S.W.2d 385 (Tex. Sup., 1967).

█ The trial court did not err in awarding plaintiff the sum of Fifteen Thousand and No/100 ($15,000.00) Dollars as reasonable attorneys' fees.

There is testimony in the record concerning the time and effort expended by the attorneys. The trier of facts may consider the nature and facts of the case, the time requirements, the amount of money involved and other factors. Here the court was aware of all such factors, plus testimony from counsel for the plaintiff. There was sufficient evidence in support of the court's finding. Certainly there was great necessity on part of plaintiff for the assistance rendered her. Texas Life Ins. Co. v. Hatch, 167 S.W.2d 802 (Eastland, Tex.Civ.App., 1942, error ref., w. o. m.); Burleson v. Morse, 172 S.W.2d 361 (Galveston, Tex.Civ. App., 1943, error ref., w. o. m.). See also Ferrous Products Co. v. Gulf States Trading Co., 323 S.W.2d 292 (Houston, Tex. Civ.App., 1959, reh. den.; affirmed, 160 Tex. 399, 332 S.W.2d 310 (1960)).

█ We find no merit in appellant's contention that the judgment is excessive and a result of bias and prejudice. It is interesting to note that the bias and prejudice referred to was supposedly engendered or promoted by the conduct of the appellant during the trial. In our opinion such conduct was intolerable yet it was tolerated by the trial judge who exercised a degree of restraint seldom seen.

All points of error are overruled and the judgment of the trial court is in all things affirmed.