**Kazue Inui STUBBE, Appellant,**

**v.**

**Marvin Merlin STUBBE, Appellee.**

**No. 14523.**

Court of Appeals of Texas,
Austin.

April 16, 1986.

Rehearing Denied June 3, 1986.

Pierre A. Kleff, Jr., Killeen, for appellant.

Helen Milburn Eversberg, U.S. Atty., Harold O. Atkinson, Asst. U.S. Atty., San Antonio, for appellee.

Before POWERS, EARL W. SMITH and BRADY, JJ.

PER CURIAM.

Kazue Inui Stubbe appeals from an order of the trial court quashing her application for writ of garnishment. The United States of America was the garnishee in this action. This appeal is limited to the question of whether a former wife of a retired military man may garnish the latter's military retirement pay to satisfy a judgment for arrearages in spousal support payable under an agreement incident to divorce. We will affirm the judgment of the trial court.

On March 8, 1982, appellant and Marvin Stubbe were divorced. The divorce decree approves and incorporates by reference an agreement incident to divorce containing a provision for "support of spouse," and defining such support as "periodic support" under § 71(a) of the Internal Revenue Code.[1] On February 14, 1985, appellant filed an action for arrearages in the periodic support due and owing under the agreement incident to divorce. On April 11, 1985, the district court signed an agreed judgment against Marvin Stubbe for $16,400.00 plus court costs. Later in April,

---

1. 8.01. *Periodic Payments.* The support payments provided for in this section 8 are intended by both spouses to qualify as "periodic payments" as that term is defined in section 71(a) of the Internal Revenue Code of 1954, as amended (hereinafter referred to as "the Code"), and as such are intended to be includable in the gross income of the payee under section 71(a) of the Code and deductible by the payor under section 215(a) of the Code. The parties therefore contemplate that all provisions of this section 8 will be interpreted in a manner consistent with that intention. The support obligation contained in this section 8 is unrelated to the division of property in this agreement, and it is not intended in any way to constitute a form of payment for any rights or interest in the estate of the parties.

8.02. *Amount of Payments.* MARVIN MERLIN STUBBE agrees to pay KAZUE INUI STUBBE periodic payments in the amount of $800 per month, the first payment being due and payable on the 1st day of February, 1982, and a like payment being due and payable on the same day of each month thereafter until terminated in accordance with the provisions of this agreement.

8.03. *Nontransferability and Termination of Payments.* This agreement to make periodic payments shall be unassignable and nontransferable. The obligation of Husband to make payments shall terminate immediately upon the death or remarriage of Wife, whichever event first occurs.

appellant instituted garnishment procedures against the United States of America (Department of the Army) to garnish the military retirement pay of Marvin Stubbe to enforce the judgment for arrearages. Appellee filed a motion to quash the application for garnishment, which motion was granted by the trial court on June 19, 1985.

Appellant seeks to garnish her former spouse's military retirement pay under 42 U.S.C. § 659(a) (1982) [hereafter § 659(a)] which provides:

Notwithstanding any other provision of law, effective January 1, 1975, moneys (the entitlement to which is based upon remuneration for employment) due from, or payable by, the United States or the District of Columbia (including any agency, subdivision, or instrumentality thereof) to any individual, including members of the armed services, shall be subject, in like manner and to the same extent as if the United States or the District of Columbia were a private person, to legal process brought for the enforcement, against such individual of his legal obligations to provide child support or make alimony payments.

Appellant bases her claim on her interpretation of the definition of "alimony" in 42 U.S.C. § 662(c) (1982) [hereafter § 662(c)] which states:

For purposes of section 659 of this title—

.     .     .     .     .

(c) The term "alimony," when used in reference to the legal obligations of an individual to provide the same, means periodic payments of funds for the support and maintenance of the spouse (or former spouse) of such individual, and (subject to and in accordance with State law) includes but is not limited to, separate maintenance, alimony pendente lite, maintenance, and spousal support; such term also includes attorney's fees, interest, and court costs when and to the extent that the same are expressly made recoverable as such pursuant to a decree, order, or judgment issued in accordance

with applicable State law by a court of competent jurisdiction. Such term does not include any payment or transfer of property or its value by an individual to his spouse or former spouse in compliance with any community property settlement, equitable distribution of property, or other division of property between spouses or former spouses.

█ The trial court premised its order to quash on two grounds. First, if both the divorce decree and the judgment rendered for the arrearages can be construed to result in "court-ordered alimony" after divorce, then both are void on their face under Texas law. *Francis v. Francis*, 412 S.W.2d 29 (Tex.1967). Alternately, if the language in the divorce decree is construed as "a division of the estate," a "contractual obligation," or a type of "contractual alimony," then the sovereign immunity of the United States has not been waived and the United States should be dismissed as a party defendant. Appellant's sole point of error claims the trial court erred in concluding that the United States has not waived its sovereign immunity for the purpose of enforcing "contractual alimony" agreements.

The statutes and public policy of Texas do not sanction alimony after a judgment of divorce has been entered. *Francis*, 412 S.W.2d at 32. However, "alimony" that contravenes the public policy of this State encompasses only those payments imposed by a court order or decree on the spouse as a personal obligation for the support and sustenance of the other spouse after a final decree of divorce. *Id.* at 33. Thus, it follows that a husband's contractual undertaking to make payments for the support of the wife, after a divorce decree becomes final, is not an obligation to pay "alimony" and does not violate the public policy of this State. *Id.* Such an agreement is entitled to whatever legal force the law of contracts will give to it. *Id.* They are now expressly authorized by statute. Tex.Fam. Code Ann. § 3.631 (Supp.1986).[2]

---

2. Agreement Incident to Divorce or Annulment

(a) To promote amicable settlement of dis-

In the instant cause, the decree of divorce approves and incorporates, but does not adopt, the spousal-support agreement.[3] Therefore, both the decree and the judgment for arrearages are valid, are not violative of public policy, and may be properly construed as "contractual alimony." *Cooper v. Dalton*, 581 S.W.2d 219, 220 (Tex. Civ.App.1979, no writ). *See also Klise v. Klise*, 678 S.W.2d 545, 548 (Tex.App.1984, no writ); *Firestone v. Firestone*, 567 S.W.2d 889, 892 (Tex.Civ.App.1978, no writ).

■ Military retirement pay is not current wages for personal service exempt from garnishment under Tex. Const. art. XVI § 28 (1986). *Wagar v. United States*, 582 S.W.2d 896 (Tex.Civ.App.1979, no writ); *United States v. Wakefield*, 572 S.W.2d 569 (Tex.Civ.App.1978, writ dism'd); *United States v. Fleming*, 565 S.W.2d 87 (Tex. Civ.App.1978, no writ). Thus, appellant may enforce the judgment for arrearages by garnishing her former husband's military retirement pay if the "contractual alimony" agreement on which the judgment is based constitutes "alimony" within the meaning of §§ 659(a) and 662(c).

■ Appellant's argument may be summarized as follows. In enacting § 662(c), Congress adopted its own definition of "alimony" that is independent of state law. This definition, "periodic payments of funds for the support and maintenance of the spouse (or former spouse)," is broad enough to encompass the "contractual alimony" agreement between appellant and her former husband. Appellant points out that § 662(c) expressly includes "maintenance" within its definition of "alimony,"

and that this term also appears in Fam. Code § 3.631(a). Citing *Butler v. Butler*, 221 Va. 1035, 277 S.E.2d 180 (1981), and *Anderson v. Anderson*, 285 Md. 515, 404 A.2d 275 (1979), appellant concludes that Congress intended its waiver of immunity to garnishment in § 659(a) to apply in any action to enforce a spousal-support obligation, whether that obligation derives from a court order or from a private contract.

We agree that Congress adopted its own definition of "alimony" by enacting § 662(c). We also agree that this definition is, on its face, broad enough to encompass "contractual alimony." But we do not agree that Congress intended that private, contractual spousal support agreements are to be enforceable by garnishment pursuant to § 659(a). To the contrary, we conclude that Congress waived the federal government's immunity to garnishment only to enforce court-ordered spousal-support obligations of the kind that contravene Texas public policy.

Waivers of sovereign immunity are to be strictly construed and must be interpreted in a manner most favorable to the government. *McMahon v. United States*, 342 U.S. 25, 27, 72 S.Ct. 17, 19, 96 L.Ed. 26 (1951); *United States v. Wakefield, supra*. Although the legislative history of § 659(a) is sparse, it is clear that Congress' primary purpose in enacting the statute was to help children and divorced spouses escape or avoid welfare dependency. *Hisquierdo v. Hisquierdo*, 439 U.S. 572, 576, 99 S.Ct. 802, 805, 59 L.Ed.2d 1 (1979). Section 659(c) was originally enacted as part of the Social Services Amendments of 1974, Pub.L. No.

putes on the divorce or annulment of a marriage, the parties may enter into a written agreement concerning the division of all property and liabilities of the parties and maintenance of either of them. The agreement may be revised or repudiated prior to rendition of the divorce or annulment unless it is binding under some other rule of law.

(b) In a proceeding for divorce or annulment, the terms of the agreement are binding on the court unless it finds that the agreement is not just and right. If the court finds the agreement is not just and right, the court may

request the parties to submit a revised agreement.

(c) If the court approves the agreement, the court may set forth the agreement in full or incorporate it by reference in the decree of divorce or annulment.

3. IT IS DECREED that the agreement of Petitioner and Respondent for the division of their estate (the attached Agreement Incident to Divorce) be and is approved and incorporated into this decree by reference as if it were recited herein verbatim.

93–647, § 101(a), 88 Stat. 2357. As the Senate report accompanying the bill makes apparent, Congress was concerned about the growing problem of absent parents who fail to support their children, and the resulting increase in the number of welfare recipients. S.Rep. No. 1356, 93d Cong., 2d Sess., *reprinted in* [1974] U.S.Code Cong. & Ad.News 8133. With reference to the waiver of immunity to garnishment, the report observes:

> State officials have recommended that legislation be enacted permitting garnishment and attachment of Federal wages and other obligations (such as income tax refunds) *where a support order or judgment exists.* At the present time, the pay of Federal employees, including military personnel, is not subject to attachment for purposes of enforcing court orders, including *orders for* child support or *alimony.*

*Id.* at 8157 (emphasis added). Section 659(a) does not create a federal cause of action, but merely removes the government's immunity from a garnishment proceeding under state law. *Stephens v. United States,* 589 F.2d 783 (4th Cir.1979); *Morrison v. Morrison,* 408 F.Supp. 315 (N.D.Tex.1976).

■ The emphasis on court-ordered alimony is understandable given the purpose of the legislation. A court order directing a person to make alimony or child support payments reflects a judicial determination that a financial need for such payments exists. No such determination is made by the district court when it approves a spousal support agreement; the court determines only that the agreement is "just and right." Fam.Code § 3.631(b).

■ The purpose served by agreements between the spouses incident to divorce, including "contractual alimony" agreements, is the amicable settlement of disputes arising from the divorce. Fam.Code § 3.631(a); *Francis,* 412 S.W.2d at 33. While the amicable settlement of disputes is a valid and important public policy, we have found no basis for concluding that Congress intended to promote this purpose

when it enacted § 659(a). To the contrary, the most common agreement incident to divorce, the property settlement agreement, is expressly excluded from the definition of "alimony" in § 662(c). Referring to this exclusion, the Supreme Court has observed that § 662(c) "limits 'alimony' to its traditional common-law meaning of spousal support." *Hisquierdo,* 439 U.S. at 576, 577, 99 S.Ct. at 806.

■ During floor debate in the House of Representatives of the bill that became the Social Services Amendments of 1974, the following discussion of the garnishment provision took place between Reps. Ullman and McFall:

> *Mr. McFall.* This is a rather broad departure from the present law, is it not?
>
> *Mr. Ullman.* This does not include unemployment compensation, however; but it does include social security. It does include Federal employment, but only where there is a *court order.*
>
> *Mr. McFall.* If one works for the Federal Government, he can have his check attached.
>
> *Mr. Ullman.* But it is only in instances where there is a *court order* for child support involved which is not being obeyed.

At this point, McFall requested a more detailed explanation. Ullman responded as follows:

> *Mr. Ullman.* Mr. Speaker, let me advise the gentleman that there have been very serious deficiencies in the law with respect to runaway fathers which have cost the Government a great deal of money. These are instances where the Government is paying out money in child support. This, remember, does not go into effect unless there is an outstanding *court order* involving situations of child support or alimony and failure of a father to live up to his obligations, or the failure of a mother.

120 Cong. Rec. 41809 (1974) (emphasis added). At a later point in the debate, Ullman indicated, in response to a stated concern that "inequities" could arise should the

garnishment provision be enacted, that the federal wage earner "can go back to the court, he has access to the court in a legal procedure, in order to take care of such circumstances." *Id.* We interpret this as a clear reference to the trial court's continuing authority to modify the terms of its order directing the payment of child support or alimony. Of course, under established principles of contract law, an obligation to pay "contractual alimony" cannot be modified or avoided on the ground that it has become more burdensome than anticipated. *Mahrer v. Mahrer,* 510 S.W.2d 402, 405 (Tex.Civ.App.1974, no writ).

We find no merit in appellant's assertion that because "contractual alimony" payments qualify for treatment as "periodic payments" under §§ 71(a) and 215(a) of the Internal Revenue Code, they must necessarily constitute "alimony" under §§ 659(a) and 662(c). Had Congress so intended, it could easily have defined "alimony" in § 659(a) by reference to § 71(a) of the Internal Revenue Code. Instead, Congress passed § 662(c), which provides a definition of "alimony" that is expressly applicable only to § 659.

Our conclusion that § 659(a) may not be utilized to enforce "contractual alimony" agreements is consistent with the only other reported Texas opinion in point. In *Shaw v. Shaw,* 623 S.W.2d 148 (Tex. App.1981, writ ref'd n.r.e.), *cert. denied,* 459 U.S. 927, 103 S.Ct. 238, 74 L.Ed.2d 188 (1982), the court stated, "We cannot accept the argument that the Congressional definition of alimony [in § 662(c)] is broad enough to include the type of agreement considered in *Francis v. Francis.*" *Id.* at 149. Although the Supreme Court has not directly addressed the problem, it has indicated its opinion that § 659(a) authorizes garnishment to enforce court-ordered alimony only. In *Veterans Administration v. Kee,* 20 Tex.Sup.Ct.J. 253 (March 5, 1986), the wife attempted to garnish her former husband's disability benefits because of his failure to pay child support and alimony as ordered by a foreign court. The court, in examining the congressional

intent behind § 659(a), observed that "Section 659(a) clearly indicates the intent of Congress to make current wages (entitlement based upon remuneration of employment) subject to garnishment for the limited purpose of paying *court-ordered* child support and alimony." *Id.* at 254 (emphasis added). To the same effect is *United States v. Stelter,* 567 S.W.2d 797 (Tex. 1978), wherein Chief Justice Greenhill observed that "Texas spouses are not protected as are spouses in other states where they may bring a garnishment suit against the United States to recover alimony or support payments." *Id.* at 799.

For the reasons discussed, we hold that the waiver of immunity to garnishment contained in § 659(a) does not extend to actions to enforce a "contractual alimony" obligation that is not based on a court order. Accordingly, the order of the district court is affirmed.