TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-97-00699-CV






Billie Cardwell, Appellant



v.



Fran Sicola-Cardwell, Independent Executrix of the


Estate of Horace Cardwell, Appellee







FROM THE COUNTY COURT AT LAW OF ANGELINA COUNTY


NO. 9959, HONORABLE JOSEPH E. MARTIN, III, JUDGE PRESIDING






 Appellant Billie Cardwell sued appellee Fran Sicola-Cardwell, Independent
Executrix of the Estate of Horace Cardwell ("the Estate"), to enforce a spousal support provision
contained in an agreement between Horace and Billie Cardwell incident to their divorce and
incorporated into their final divorce decree. Following a bench trial, the trial court rendered
judgment in favor of the Estate. We will reverse and render.


FACTUAL AND PROCEDURAL BACKGROUND


 After twenty-six and a half years of marriage, Horace and Billie Cardwell divorced
in 1983. Immediately before the divorce, the parties entered into an Agreement Incident to
Divorce (the "Agreement") in an effort to amicably divide their marital property and to provide
spousal support for Billie Cardwell. The Agreement was duly incorporated into the couple's final
divorce decree. Pursuant to the Agreement, Billie Cardwell was to receive monthly payments of
$1,000 each, to be paid in two equal installments per month. The Agreement specifically provided
that the support obligation would terminate either on the death of the wife or when 300 payments
had been made, whichever occurred first.

 Horace Cardwell died in 1995; his then wife, Fran Sicola-Cardwell, was named
independent executor of his estate. During his lifetime, Mr. Cardwell faithfully made all support
payments to Billie Cardwell as they became due, for a total of 148 payments. After his death,
however, the payments were discontinued.

 Billie Cardwell filed suit against the Estate seeking to enforce the support payments
due after Horace's death. She alleged that pursuant to the Agreement she was entitled, as a
creditor of the Estate, to the remaining 152 of the agreed-upon 300 periodic payments. After a
bench trial, the trial court rendered a take-nothing judgment against Cardwell. Pursuant to
Cardwell's request, the court made findings of fact and conclusions of law.

 On appeal, Cardwell raises seven issues. The first three issues concern whether
the trial court erred in concluding as a matter of law that so-called "contractual alimony" is a
personal obligation presumptively terminating on the obligor's death and that the obligee has the
burden to overcome this presumption by showing the parties' clear and unmistakable intent to the
contrary. The fourth through seventh issues challenge the trial court's fact findings that the
Agreement did not contain adequate language to overcome the presumption of termination; that
the periodic payments were intended to substitute for Horace Caldwell's income; and that the
circumstances surrounding the making of the Agreement did not evidence clear and unambiguous
intent by the parties that the payments would continue after Horace's death.

DISCUSSION



 Even before Texas courts could impose spousal support obligations at divorce, (1)
parties to a divorce could enter into written agreements providing for the maintenance of either
spouse. See Francis v. Francis, 412 S.W.2d 29, 32 (Tex. 1967); Tex. Fam. Code Ann.
§ 7.006(a) (West Supp. 1998). The court could then incorporate the agreement into the final
divorce decree. Id. at § 7.006(b). Before statutory approval of such agreements, the Texas
Supreme Court had determined that settlement agreements between a husband and wife obligating
one spouse to make periodic payments in support of the other spouse after divorce do not
constitute court-ordered alimony and therefore are not void in the State of Texas. Francis, 412
S.W.2d at 29. The fact that a court expressly approves such an agreement and incorporates it into
the final divorce decree does not transform the contractual payments into prohibited court-ordered
alimony. Id.; see also Klise v. Klise, 678 S.W.2d 545, (Tex. App.--Houston [14th Dist.] 1984,
no writ).


Spousal Support Settlement Agreements Are Governed By The Law of Contracts


 In determining that agreements for contractual alimony are not void, the Francis
court clearly distinguished between court-ordered alimony payments and assumed contractual
obligations for support. Francis, 412 S.W.2d at 33 (emphasis added). The court held that an
assumed obligation for spousal support is properly characterized as a contractual duty having 
"whatever legal force the law of contracts will give to it." Francis, 412 S.W.2d at 31 (emphasis
added).

 Even before the Francis decision, the supreme court had held that a settlement
agreement adopted in a divorce decree falls within the purview of contract law. See Ex parte
Jones, 358 S.W.2d 370, 375 (Tex. 1962) (holding that judgment based on terms of settlement
agreement must be interpreted under law of contracts rather than law of judgments). Since
Francis, the supreme court has, on several occasions, confirmed that under Texas law the legal
force and meaning of marital property settlement agreements are governed by the law of contracts. 
See McGoodwin v. McGoodwin, 671 S.W.2d 880, 882 (Tex. 1984); see also McCray v. McCray,
584 S.W.2d 279, 281 (Tex. 1979) (applying law of contracts to contractual alimony agreement);
cf. Hutchings v. Bates, 406 S.W.2d 419, 421 (Tex. 1966) (holding that agreement for periodic
child support payments is governed by law of contracts).

 Following Francis, courts of appeals have consistently applied contract principles
and rules of construction in interpreting agreements providing for spousal support. See, e.g.,
Powers v. Powers, 714 S.W.2d 384, 390 (Tex. App.--Corpus Christi 1986, no writ) (enforcing
settlement agreement provision as action on contract); Deen v. Deen, 631 S.W.2d 215, 216 (Tex.
App.--Amarillo 1982, no writ) (resolving dispute over contractual alimony "within the framework
of certain basic principles of contract law"); Conner v. Bean, 630 S.W.2d 697, 700-01 (Tex.
App.--Houston [1st Dist.] 1981, writ ref'd n.r.e.) (affirming award for anticipatory breach of
contract in wife's suit on contractual alimony agreement); Myrick v. Myrick, 601 S.W.2d 152, 153
(Tex. Civ. App.--Waco 1980, no writ) (stating that agreements to make support payments after
divorce are "enforceable as any other contractual obligation"); Mahrer v. Mahrer, 510 S.W.2d
402, 404 (Tex. Civ. App.--Dallas 1974, no writ) (characterizing husband's agreed spousal support
obligation as "contractual obligation"); Dicker v. Dicker, 434 S.W.2d 707, 713 (Tex. Civ.
App.--Fort Worth 1968, writ ref'd n.r.e.) (allowing recovery for breach of contract where
husband failed to make contractual alimony payments).

 In a case with facts nearly identical to those in the present appeal, the Beaumont
Court of Civil Appeals determined that an agreement to pay spousal support survived the death
of the obligor. See Republic Nat'l Bank v. Beaird, 475 S.W.2d 344 (Tex. Civ. App.--Beaumont
1971, writ ref'd). Beaird involved a settlement in which the husband agreed to pay, for the wife's
support, a designated sum on a certain date each year for a specified number of payments. The
husband died before the term for support payments expired, and the representatives of his estate
refused to continue the payments as they became due. The wife sued the estate for the balance due
pursuant to the agreement. Relying on Francis, the court found that the estate was obligated to
the wife for the balance due under the agreement. See id. at 346.

 The facts presented on this appeal mirror those of Beaird. Horace and Billie 
Cardwell entered into an agreement incident to their divorce whereby Horace was to pay to Billie
for her support a designated sum on specific dates each month for a certain length of time. Before
all the agreed-upon payments were made, Horace died, and his estate refused to honor the claim
made by Billie for the remainder of the payments. We agree with the Beaumont court that these
facts fall squarely within the scope of Francis, and thus we will apply contract principles to
determine the survival of the payment obligation after Horace's death.


Traditional Presumptions of Alimony Law Adopted by Other Jurisdictions Do Not Apply


 Both parties to this appeal devote much of their argument to whether this state
should adopt the presumption imposed by some jurisdictions that alimony, contractual or
otherwise, ends upon the death of the obligor, with the burden falling on the obligee to overcome
the presumption by showing a clear manifestation that the parties intended to the contrary. See
Gavin L. Phillips, Annotation, Death of Obligor Spouse as Affecting Alimony, 79 A.L.R.4th 10
(1979). Both parties characterize this as an issue of "first impression" in Texas. As indicated by
its findings of fact and conclusions of law, the trial court determined that such a presumption
should be adopted and found that Billie Cardwell did not meet her burden of showing a clear and
unmistakable manifestation of the parties' intent that Horace's obligation would survive his death.

 As discussed above, however, contractual alimony agreements in Texas are
governed by the law of contracts. Under principles of contract law, contractual obligations
generally survive the death of a party and bind his estate if the contract is capable of being
performed by the estate representative. See TPS Freight Distribs., Inc. v. Texas Commerce Bank-Dallas, 788 S.W.2d 456, 458-59 (Tex. App.--Fort Worth 1990, writ denied); see also Solomon
v. Greenblatt, 812 S.W.2d 7, 17 (Tex. App.--Dallas 1991, no writ). Thus, to the extent there
is a "presumption" regarding survival of a contractual obligation after the death of one of the
parties, it is exactly the converse of that advanced by the Estate and adopted by the trial court.

 Neither the historical treatment of alimony in Texas, nor Texas case law, indicates
that the general rules of alimony--i.e., court-ordered spousal support--should apply to contracts
for spousal support, particularly the rule that alimony presumptively terminates on the obligor's
death. Cf. Hutchings, 406 S.W.2d at 421 (holding that agreement for periodic child support
payments is governed by law of contracts, and under contract principles payments survive
obligor's death absent agreement to contrary shown by provisions of contract or surrounding
circumstances). Because Texas law mandates that we apply contract principles to determine
whether the obligation contained in the Agreement terminated on Horace Cardwell's death, we
conclude that the trial court erred in concluding as a matter of law that contractual alimony
terminates on the death of the obligor absent a clear and unambiguous manifestation of intent to
the contrary and in ruling that the obligee has the burden to overcome the presumption of
termination.


The Agreement Did Not Create a Personal-Services Contract 


 As previously stated, contractual obligations generally survive the death of one of
the parties. We recognize, however, that contracts for "personal services" are an exception to this
rule. See TPS Freight, 788 S.W.2d at 457-8. In a personal-service contract, survival of a certain
party is a constructive condition to any further obligation of either party to the contract. Id.; Nutt
v. Members Mutual Ins. Co., 474 S.W.2d 575, 576 (Tex. Civ. App.--Dallas 1971, writ ref'd
n.r.e.). This is because performance of this type of contractual obligation depends on the
existence of a particular person, or because one party relies on the skill or character of the other
party, or because the contract is based on a personal confidence between the parties. See, e.g.,
Peniche v. Aeromexico, 580 S.W.2d 152, 156-57 (Tex. Civ. App.--Houston [1st Dist.] 1979, no
writ) (personal confidences); Lancaster v. Greer, 572 S.W.2d 787, 790 (Tex. Civ. App.--Tyler
1978, writ ref'd n.r.e.) (skill or character); Nutt, 474 S.W.2d at 576 (existence of person).

 In the present case, the Estate contends that the Agreement was a "personal"
contract as to Horace Cardwell, therefore terminating upon his death. We disagree. The
Agreement does not depend on the skill or character of Horace Cardwell, nor on his existence,
and it is not based on a confidence between the parties. Mr. Cardwell's only obligation was to
make monthly payments of a specified amount for a specified period of time. He did not expressly
or impliedly undertake any special services that could be completed only by him. The Agreement
simply called for a payment of money. His estate is certainly able to complete that task. The
amount owed is merely a debt with no distinctively personal characteristics.

 Further, the fact that the Agreement by its terms is not assignable or transferable
does not make it a contract for personal services. Relying on authority holding that personal
contracts cannot be assigned, the Estate argues that because the contract was "unassignable and
nontransferable," the parties intended that the obligation would be performed by Horace and no
one else, making it a "personal" contract that would terminate on Horace's death. See Nutt, 474
S.W.2d at 576; Salter v. Jones, 348 S.W.2d 381, 383 (Tex. Civ. App.--El Paso 1961, no writ). 
We reject this proposition. Assuming, without deciding, that all personal contracts are neither
assignable nor transferable, this does not mean that all contracts that are not assignable or
transferable are necessarily personal. Parties may choose to negotiate for a non-assignable
contract for any number of reasons other than to make the contract personal.

 Because there was nothing personal about Horace Cardwell's obligation to pay
spousal support, we conclude that the trial court was incorrect in finding that the parties intended
the Agreement to be a personal obligation ending with Horace Cardwell's death, and that the court
likewise erred in concluding that agreements to pay contractual alimony are personal obligations
as a matter of law.


The Agreement Is Not Ambiguous


 In construing a written contract, our primary concern is to ascertain the true
intention of the parties as expressed through the provisions of the contract, Coker v. Coker, 650
S.W.2d 391, 393 (Tex. 1983), and to give effect to this written expression of the parties' intent,
Balandran v. Safeco Insurance Company of America, 972 S.W.2d 738, 741 (Tex. 1998). 
Although parol evidence relating to the parties' intent is not admissible to create an ambiguity,
"the contract may be read in light of the surrounding circumstances to determine whether an
ambiguity exists." Id. A contract is ambiguous only if, after applying appropriate rules of
construction, it is subject to two or more reasonable interpretations. Id. If, on the other hand,
the contract language can be given a definite legal meaning, it is not ambiguous. National Union
Fire Ins. Co. v. CBI Indus., Inc., 907 S.W.2d 517, 520 (Tex. 1995); Alba Tool & Supply Co. v.
Industrial Contractors Inc., 585 S.W.2d 662, 664 (Tex. 1979). If the contract can only be given
one reasonable construction, it is unambiguous and it will be enforced as written. Puckett v. U.S.
Fire Ins. Co., 678 S.W.2d 936, 938 (Tex. 1984). Whether a contract is ambiguous is a question
of law to be determined by the court. National Union, 907 S.W.2d at 520.

 In the present case, the Estate argues that several provisions contained in the
Agreement, in combination with other relevant circumstances, create an ambiguity as to the
Cardwells' intent concerning the survival of the contractual alimony obligation: (1) language
connected the support to obligations arising from the marital relationship; the difference in earning
capacities; the wife's need for future support; and the benefits the wife may have received from
a continuation of the marriage; (2) Mr. Cardwell was allowed to take an income tax deduction
knowing this benefit is not available to the Estate; (3) the Agreement recited that it was "a full and
final settlement of the parties' rights and obligations"; (4) the Agreement provided that it would
be "unassignable and nontransferable"; (5) the parties are alleged to have known the "well-established" principle that alimony terminates on the obligor's death; (6) the attorney who drafted
the Agreement "understood" that it would terminate on Horace's death and believed that he was
merely documenting the parties' intent; and, (7) Horace Cardwell's age at the time of the
Agreement meant that he would have been 87 years old had he lived to complete all 300 payments.

 After carefully considering each of the provisions the Estate advances, we are not
convinced they render the Agreement ambiguous as to the issue at hand. To determine whether
a contract is ambiguous, we must look at the contract as a whole in light of the circumstances
present when the parties made the agreement. Friendswood Dev. Co. v. McDade + Co., 926
S.W.2d 280, 282 (Tex. 1996) (emphasis added). We are satisfied that the relevant portion of the
Cardwells' Agreement, considering the contract as a whole and the surrounding circumstances at
the time it was executed, is not open to more than one reasonable construction. The Agreement
unambiguously provides that the obligation for spousal support ends on the occurrence of one of
two specified events: (1) the death of the wife, or (2) the making of 300 payments. If it had been
the intent of the parties to include the death of the husband as a terminating event, it would have
been simple to provide as much. We are unable to say that the Agreement can reasonably be
construed as expressing an intent that Horace Cardwell's obligation would end with his death. (2)

 After considering all the provisions of the Agreement and the circumstances
surrounding its execution, we hold that the Agreement is not ambiguous and that it manifests the
clear intent of the parties that Horace Cardwell's spousal support obligation would survive his
death. We therefore determine that the Estate is responsible for support payments accruing after
Horace's death.


CONCLUSION



 We reverse the trial court's judgment that Billie Cardwell take nothing by this suit. 
We render judgment that Billie Cardwell recover from Fran Sicola-Cardwell, Independent
Executrix of the Estate of Horace M. Cardwell, $102,359.72, being the present value, as found
by the trial court, of the remaining 152 payments of $1,000 each; we also render judgment that
Billie Cardwell recover from the Estate attorney's fees in the amount of $10,000 through trial plus 

$7,500 for appeal to this Court, as well as $604.57 for expenses and court costs, all as found by
the trial court.



 

 J. Woodfin Jones, Justice

Before Chief Justice Yeakel, Justices Jones and B. A. Smith

Reversed and Rendered

Filed: October 15, 1998

Publish

1. The Texas legislature has recently provided for limited court-ordered maintenance from the
future income of one spouse for the support of the other spouse after the dissolution of the
marriage. See Tex. Fam. Code Ann. § 8.001 (West Supp. 1998). However, the eligibility
requirements are numerous, and the maximum duration of the payments is specifically dictated. 
Id. at § 8.002, .005. In general, the scope of this newly created court-ordered maintenance is very
narrow.
2. We do not regard Wesley v. Pickard, 783 S.W.2d 589 (Tex. App.--Houston [1st Dist.]
1990, no writ), which relied on a unique interlineated provision in the contract, as being to the
contrary.


biguous and it will be enforced as written. Puckett v. U.S.
Fire Ins. Co., 678 S.W.2d 936, 938 (Tex. 1984). Whether a contract is ambiguous is a question
of law to be determined by the court. National Union, 907 S.W.2d at 520.

 In the present case, the Estate argues that several provisions contained in the
Agreement, in combination with other relevant circumstances, create an ambiguity as to the
Cardwells' intent concerning the survival of the contractual alimony obligation: (1) language
connected the support to obligations arising from the marital relationship; the difference in earning
capacities; the wife's need for future support; and the benefits the wife may have received from
a continuation of the marriage; (2) Mr. Cardwell was allowed to take an income tax deduction
knowing this benefit is not available to the Estate; (3) the Agreement recited that it was "a full and
final settlement of the parties' rights and obligations"; (4) the Agreement provided that it would
be "unassignable and nontransferable"; (5) the parties are alleged to have known the "well-established" principle that alimony terminates on the obligor's death; (6) the attorney who drafted
the Agreement "understood" that it would terminate on Horace's death and believed that he was
merely documenting the parties' intent; and, (7) Horace Cardwell's age at the time of the
Agreement meant that he would have been 87 years old had he lived to complete all 300 payments.

 After carefully considering each of the provisions the Estate advances, we are not
convinced they render the Agreement ambiguous as to the issue at hand. To determine whether
a contract is ambiguous, we must look at the contract as a whole in light of the circumstances
present when the parties made the agreement. Friendswood Dev. Co. v. McDade + Co., 926
S.W.2d 280, 282 (Tex. 1996) (emphasis added). We are satisfied that the relevant portion of the
Cardwells' Agreement, considering the contract as a whole and the surrounding circumstances at
the time it was executed, is not open to more than one reasonable constr